In re **MISSIONARY BAPTIST FOUNDATION OF AMERICA, INC.,**
**et al., Debtors.**

**Robert B. WILSON, Trustee In the Bankruptcy Case of Missionary Baptist Foundation of America, Inc., Plaintiff,**

v.

**FIRST NATIONAL BANK, LUBBOCK, TEXAS, Defendant.**

**Bankruptcy No. 580–00084.**
**Adv. No. 582–0214.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 27, 1987.

Richard Hubbert, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for trustee.

Jack McCutchin, Jr., Crenshaw, Dupree & Milam, Lubbock, Tex., for the Bank.

## MEMORANDUM OF OPINION CONCERNING INTEREST

JOHN C. AKARD, Bankruptcy Judge.

The Missionary Baptist Foundation of America and related entities filed for relief under Chapter 11 of the Bankruptcy Code on October 15, 1980. Shortly thereafter, Robert B. Wilson was appointed Trustee-in-Bankruptcy.

The Trustee brought an action against the First National Bank at Lubbock, Texas (Bank) alleging invalid financial arrangements, preferential payments, postpetition transfers, fraudulent conveyances, and the like. In October, 1984, the matter was heard before the Honorable Bill H. Brister, the prior Judge of this Court. His Memorandum and Order of February 25, 1985 was affirmed in all respects by the Honorable Halbert O. Woodward, Chief United States District Judge, on June 18, 1985. The matter was appealed to the United States Court of Appeals for the Fifth Circuit which, on August 11, 1986, affirmed in part, reversed in part and remanded. *Wilson v. First National Bank, Lubbock, Texas, (In the Matter of Missionary Baptist Foundation of America, Inc.)*, 796 F.2d 752 (5th Cir.1986). The Fifth Circuit's mandate remanding this matter to the District Court was issued on September 29, 1986. By Order dated October 2, 1986, the Honorable Halbert O. Woodward, Chief United States District Judge, referred this matter to the Bankruptcy Court for compliance with the mandate of the United States Court of Appeals for the Fifth Circuit.

### Post-Petition Transfer of Warrants

The Fifth Circuit determined that warrants issued by the State of Texas in the amount of $52,097.53 which were acquired by the Bank on October 15, 1980, were property of the estate and must be returned to the estate pursuant to 11 U.S.C. § 549. The Court said:

> The Bank's behavior in this instance is a perfect example of the sort of "last minute grab" that Congress attempted to prevent in the automatic stay provisions of 11 U.S.C. § 362.

*Missionary Baptist, supra,* at 764. The District Court (and thus, this Court as a unit of the District Court) was directed to enter judgment in the Trustee's favor for the $52,097.53 collected on the warrants. *Missionary Baptist, supra,* at 764.

The remaining question is whether the Trustee is entitled to prejudgment interest on this amount. If interest is allowed, the Court must determine the date the interest is to commence, the date it is to end, the rate of interest, and should it compound.

### Should Interest Be Allowed?

The Bankruptcy Code does not specifically allow prejudgment interest nor does it specifically prohibit prejudgment in-

terest. The briefs submitted by the parties correctly conclude that it is in the equitable discretion of this Court to allow prejudgment interest. *Crampton v. Dominion Bank of Bristol, N.A. (In re The H.P. King Company, Inc.)*, 64 B.R. 487, at 488–89 (Bankr.E.D.N.C.1986).

Although the funds represented by the warrants were postpetition transfers, they are analogous to preferences. The rationale for allowing prejudgment interest on avoided preferential transfers is well stated in *Foreman Industries, Inc. v. Broadway Sand & Gravel (In re Foreman Industries, Inc.)*, 59 B.R. 145 at 155 (Bankr.S.D. Ohio 1986):

> [I]f litigation to recover a prefiling transfer is successful, recovering only the amount originally transferred is not adequate. Not only would the one creditor have received one hundred per cent (100%) of the amount owed by the debtor, but the creditor would also have had total control and use of the property transferred, including the opportunity to simply invest the amount in question until any litigation concerning the transfer was concluded—a situation which would not be true for other creditors. At the same time, the debtor's estate would have been deprived not only of the property transferred, to which it was rightfully entitled, but also the control and use of the property, particularly for investment purposes. In such a situation, all creditors and claimants of the estate would have had the amount they were entitled to receive diminished not merely by the wrongful transfer of the funds, but also by the continued retention of those funds. The wrongful retention of those funds can be redressed by an award of prejudgment interest. The awarding of prejudgment interest is compensatory. It compensates the debtor's entire estate for the use of those funds for the period of time that they were wrongfully withheld from the estate.

■ The Bank argues that this Court should not, equitably, order the payment of prejudgment interest, but the foregoing quotation from *Foreman Industries* and the Fifth Circuit's characterization of the Bank's behavior as a "last minute grab" convinces this Court that interest should be awarded to the Trustee.

### When Should Interest Commence?

In the case of a postpetition transfer, it seems that interest should commence from the date of the transfer. In this case, however, the transfer occurred as a result of the distinctive nature of warrants issued by the State of Texas and so some consideration to a later date should be given.

■ Turning again to the law of preferences for guidance, we find that interest upon a voidable preference recovered by a Trustee-in-Bankruptcy should be computed from the date of demand for its return, or, in the absence of a demand, from the date of the commencement of the suit for recovery. *Palmer v. Radio Corp. of America*, 453 F.2d 1133 at 1140 (5th Cir.1971).

■ In his brief concerning prejudgment interest, the Trustee suggests that the date of the filing of the Adversary Proceeding, October 1, 1982, would be the appropriate date for interest to commence. Under the circumstances of this case, the Court agrees.

### What Interest Rate Should Be Used?

■ Neither the Bankruptcy Code nor other Federal statutes provide a prejudgment rate of interest. It has been suggested that Federal Courts should follow the prejudgment rate of interest allowed in State Courts in the State where the Federal Court sits. Texas does not have a statutory prejudgment rate of interest which would be applicable to the circumstances of this case. It is therefore suggested that the Federal Courts use the rate of interest allowed on judgments in the Texas Courts. If the contract does not specify the rate of interest, Texas Courts are to use the rate of interest in effect on the date of judgment published by the Consumer Credit Commissioner of the State of Texas based on the auction rate quoted on a discount

basis for 52–week treasury bills issued by the United States Government, but not less than 10% nor more than 20% per annum. TEX.REV.CIV.STAT.ANN. art. 5069—1.05 (Vernon Pamph.Supp.1986).

The use of the State judgment rate has appeal, particularly if the matter is before the Federal Court on diversity of citizenship. In this case, we are dealing with a right of action created under the Bankruptcy Code and it would seem more appropriate to look to Federal law for guidance on the question of interest.

Post-judgment interest is the subject of 28 U.S.C. § 1961, which reads in pertinent part as follows:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court ... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction for fifty-two week United States Treasury bills settled immediately prior to the date of the judgment

...

(b) Interest shall be computed daily to the date of payment ... and shall be compounded annually.

Since the District Courts have original and exclusive jurisdiction of all cases under the Bankruptcy Code, 28 U.S.C. § 1334, and Bankruptcy Judges are judicial officers of the District Court, 28 U.S.C. § 151, the quoted provisions concerning interest on a money judgment in a civil case in the United States District Court apply to money judgments granted by the Bankruptcy Court. In the absence of a specific statutory directive, it seems only logical that the Bankruptcy Court should apply the interest provided for in 28 U.S.C. § 1961 both pre- and post-judgment. This is the conclusion reached in *H.P. King Company, supra* at

492 and in *Foreman Industries, Inc., supra* at 157.

The Bank argues that, if prejudgment interest is to be allowed at all, it should compensate the Trustee for lost investment income and that the most accurate measure of this lost investment income would be to adjust the interest each time there is an auction of 52–week United States Treasury bills. This is possible because the Director of the Administrative Office of the United States Courts furnishes information on these auctions to each United States District Clerk. The exhibit attached to the Bank's brief shows that the auction rate on October 1, 1982 was 10.41%; between that date and November 20, 1986, the rates varied from a high of 12.17% to a low of 5.63%; and that the overall average for the years 1982–1986 is 9.16%. It appears that the rates are adjusted every three to four weeks.

In effect, the Bank asserts that the Trustee could have invested the funds in Treasury Bills and therefore this method of calculation, although laborious, would most accurately reflect the loss of income to the Trustee. If this assumption is followed, would it not be even more accurate to adjust the calculation every 52–weeks, since these are quotations for 52–week Treasury Bills and once invested, the Trustee would not be able to withdraw the money until the bills matured? The problems of any such calculation are readily apparent. They were undoubtedly apparent to Congress when 28 U.S.C. § 1961 was passed, because Congress specified that the judgment should bear interest at the price established by the last auction immediately prior to the date of the judgment. Congress having stated that post-judgment interest should not fluctuate, it seems only logical that prejudgment interest should not fluctuate. The prejudgment interest is therefore fixed at 10.41% per annum.[1]

---

1. In *H.P. King Company, supra* at 492, the Court, in applying 28 U.S.C. § 1961, granted interest on a preference at the auction rate immediately prior to the demand for payment. In a footnote, the Court suggested that, had there been a more dramatic fluctuation of interest rates during the appropriate time, the Court would have considered a floating interest rate based on all of the auction prices. For the reasons stated,

*Should the Interest Compound?*

■ In 28 U.S.C. § 1961(b), Congress provided that the interest should compound annually. We see no reason to adopt a different rule for prejudgment interest. Congress did not specify the meaning of annually, but presumably that means one year from the date of the commencement of the interest so that in this case the interest will compound on September 30, 1983 and on the 30th day of September of each year thereafter. If Congress had wished annually to refer to the calendar year, it would have been very simple to say that the interest compounded at the end of each calendar year.

*What Date Does the Interest
Terminate?*

■ 28 U.S.C. § 1961(b) provides that the interest shall be computed daily to the date of payment. This, of course, relates to interest on judgments.

It can be argued that prejudgment interest should be calculated to the date of the judgment with that amount added to and made a part of the judgment and the judgment bearing interest at the most recent auction rate. Authority for this procedure is found in the *H.P. King Company* case, *supra* at 492. In that case, the amount of the preference had been paid to the Trustee and the only question was the amount of the prepetition interest to which the Trustee was entitled. The interest was therefore capable of determination to the exact dollar amount and the interest on that latter amount was allowed at the rate determined by the most recent auction.

Where the principal of the obligation has not yet been paid, the better approach would be to allow the prepetition interest rate to continue, compounded annually and computed daily to the date of payment.[2]

Order accordingly.

this Court does not feel that the floating interest rate is appropriate.

**2.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.