## In re HARVARD MANUFACTURING CORP., Debtor.

### Marvin A. SICHERMAN, Trustee, Plaintiff,

v.

### Charles L. JELM, et al., Defendants.

Bankruptcy No. B82–00184.

Adv. Nos. B82–0339, B82–0567.

United States Bankruptcy Court, N.D. Ohio, E.D.

Jan. 17, 1989.

Amended Order Feb. 9, 1989.

Michael D. Zaverton, and Richard A. Baumgart, Dettelbach & Sicherman, Cleveland, Ohio, for trustee.

---

Thomas C. Pavlik, Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze, Cleveland, Ohio, for debtor.

Robert L. Handros, Trial Attorney, Tax Div., U.S. Dept. of Justice, Washington, D.C.

Marilyn Shea–Stonum, Jones, Day Reavis & Pogue, Special Counsel to Trustee, Cleveland, Ohio.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In these consolidated adversary proceedings, Marvin A. Sicherman (Trustee) seeks a grant of summary judgment regarding certain alleged preferential transfers made by Harvard Manufacturing Corporation (Debtor) to the Internal Revenue Service (IRS) within ninety days of the Debtor being placed into an involuntary Chapter 7 case. In view of the following findings and conclusions, summary judgment is deemed appropriate and is hereby granted.

This is a core proceeding under provisions of 28 U.S.C. 157(b)(2)(F), with jurisdiction further conferred under 28 U.S.C. 1334 and General Order No. 84 of this District. The operative facts are generally undisput-ed. Within a ninety-day period preceding the Debtor being placed into an involuntary Chapter 7, the Debtor caused to be paid to the IRS an approximate amount of $103,-000.00.[1] Purportedly, that amount was made in a total of six transfers as payment for the Debtor's third and fourth quarterly taxes which were due for 1981. The Trustee contends that all of those transfers were preferentially made and are subject to recovery by the estate pursuant to § 547 of the Bankruptcy Code [11 U.S.C. 547]. Further, he contends that none of the funds paid to IRS emanated from trust funds. In opposition, the IRS contends that although the transfers were made within the preferential period, all of the payments, except one, were made for current tax obligations when made and further contends that all of the payments received from the Debtor were paid from funds held in trust for payment of the Debtor's tax liabilities.

### I.

The Debtor's involuntary Chapter 7 petition was filed on January 20, 1982. Between the dates of October 31, 1981 and the petition date, the following transfers were made on behalf of the Debtor to the IRS:

| DATE PAYMENT RECEIVED BY IRS | AMOUNT OF PAYMENT | PURPOSE OF PAYMENT |
|---|---|---|
| October 31, 1981 | $11,000.00 | Partial Payment of Debtor's 3rd quarter taxes for 1981 |
| December 8, 1981 | $ 6,081.18 | Payment of Debtor's taxes for October, 1981 |
| December 8, 1981 | $ 7,022.07 | Payment of Debtor's taxes for October, 1981 |
| December 18, 1981 | $ 8,936.24 | Payment of Debtor's taxes for October, 1981 |
| January 5, 1982 | $27,640.81 | Payment of Debtor's taxes for November and December, 1981. |
| January 18, 1982 | $63,907.06 | Payment of balance due on Debtor's 3rd quarter 1981 taxes.[2] |

During the subject transfer period the Debtor maintained only two bank accounts, a general account and a payroll account. (See Depo. Testimony, F. Horejs, p. 7).

---

**1.** At the time the Debtor's case was filed, the 45–day preferential rule was in effect under § 547.

**2.** The Trustee has alleged that all of the above transfers, except the $11,000.00 transfer dated October 31, 1981 and $2,048.16 of the $27,640.80 were preferentially made.

Pursuant to IRS Reg. § 31.6302(c)–1(a)(1)(i)(b), the Debtor was obligated to withhold from gross earnings of its employees amounts for federal income tax and social security obligations. Those withholdings were to have been periodically deposited into a segregated trust account within three banking days of the 3rd, 7th, 11th, 15th, 19th, 22nd, 25th and the last day of each month (namely, the "eight monthly periods"). A failure to timely make the trust fund deposits resulted in the imposition of a penalty. (*See*, IRS Reg. § 301.6656–1(a)). In the Debtor's case, amounts were withheld from the employees' earnings but were not deposited into a dedicated trust account as required by IRS Reg. § 31.6302. Rather, the withheld funds were comingled with other funds of the Debtor's general account and were used in the operation of the Debtor's business. (Horejs' Depo., p. 10, L. 6–21). As may be determined from the charted transfers above and the Debtor's 1981 3rd and 4th quarter tax returns (Exs. A and B), except for $2,048.16 deposited in December, 1981, the Debtor failed to make timely withholding deposits during the subject period. The Debtor's 1981 third quarter tax return indicates no deposits were made to a segregated account during that quarter. In fact, when the third quarter's tax return was filed on October 31, 1981, the Debtor paid less than the tax liability due (only $11,000.00 of $74,907.16). That left a third quarter tax balance of $63,907.06 which was not paid until the first quarter of 1982 on January 18, 1982.

On November 30, 1981, the Debtor ceased business operations. (See, Ex. F). Beginning on or about December 8, 1981, the Debtor transferred certain of its accounts receivable funds to its legal counsel for the purpose of payment of its withholding tax liabilities. (See, Horejs' Depo., p. 18, L. 9 and 11–19). Upon receipt of those funds by the Debtor's counsel, they were placed in a client's trust account. (Horejs' Depo., p. 15). Ultimately, the funds on deposit in the client's trust account were disbursed for payment of legal fees and the Debtor's delinquent tax obligations (See, Ex. E.).

The Debtor's 1981 fourth quarter tax return reflects that only one withholding tax deposit was timely made during that quarter. (See, Ex. B and the above charted transfers). October, 1981 required deposits were not made until December 8, 1981 ($6,081.16 and $7,022.07) and again on December 18, 1981 ($8,936.24). Only on January 5, 1982 did the Debtor make its deposits for the last two months of the fourth quarter of 1981. Only the payment of $2,048.16 made for the last monthly deposit period ending December 31, 1981, was timely made by the Debtor (See, Ex. B). As late as January 15, 1982, the Debtor paid an additional $63,907.09 from its attorney's client's account to the IRS toward its delinquent 1981 third quarter tax obligations. With the exception of the timely tax payment of $2,048.16 paid on January 5, 1982, all of. the other transfers by the Debtor are included in the Trustee's alleged preferential transfers.

## II.

The principal dispositive issue for the Court's determination is whether the subject transfers made by the Debtor to the IRS were avoidable preferential transfers. In examining applicable law, § 547(b) of the Bankruptcy Code allows a trustee to avoid any transfer of an interest of the debtor in property—

1) to or for the benefit of a creditor;

2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

3) made while the debtor was insolvent;

4) made (A) on or within 90 days before the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the

provisions of this title. [11 U.S.C. 547(b) *et seq.*].

■ In order to successfully maintain a preferential transfer action, the burden of proof is upon the party alleging such a transfer, and the burden must be met by a preponderance of the evidence. *In re Allegheny,* 86 B.R. 466, 17 B.C.D. 876 (Bankr. W.D.Pa.1988); *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir. 1988), *cert. den. Bozek v. Danning,* — U.S. ——, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). Herein, that burden must be satisfied by the Trustee, and the elements of § 547(b) must be satisfied conjunctively. During the course of pretrial discovery, the IRS replied it received payments from the Debtor during the ninety-day period prior to the petition date totalling $124,587.34. Thusly, the requirement of § 547(b)(4) has been established. (*See,* Defendant's Answer to Interrogatory No. 2, Ex. C). The IRS also replied that the funds it received from the Debtor were received while it was a creditor of the Debtor. (*See,* Defendant's admission to Admission Request No. 12). Thusly, the requirement of § 547(b)(1) has been established. Further, the deposition testimony of E. Horejs indicates that the Debtor was insolvent (Horejs' Depo., p. 29, Line 1–30). Accordingly, the requirement of § 547(b)(3) is established.

■ The remaining elements of § 547(b) call for a determination of whether the subject transfers were made on account of an antecedent debt or were made under the ordinary course of business exception to a preferential transfer (*See,* § 547(c)). Although not defined under the Bankruptcy Code, the term "antecedent debt" is addressed in § 547(b)(2) as being a debt that is owed by a debtor before [the] transfer is made. Other courts have similarly defined the term. *In re World Financial Services Center, Inc.,* 78 B.R. 239 (9th Cir. BAP 1987) *aff'd* 860 F.2d 1090 (9th Cir.1988); *In re Brown Family Farms, Inc.,* 80 B.R. 404 (Bankr.N.D.Ohio 1987); *In re AOV Industries, Inc.,* 85 B.R. 183 (Bankr.D.D.C.1988). Peculiar to the present situation, § 547(a)(4) implicitly addresses an antecedent debt where it provides that

(a) In this matter—
(4) a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension. [11 U.S.C. 547(a)(4)].

As previously indicated, IRS Reg. § 31–6302(c)–1(a)(1)(i)(b) provides for eight monthly periods in which timely withholding deposits must be made by certain employers. A failure to make the deposits in a timely manner places the employer in a penalty position. § 301.6656–1(a) provides:

If any person is required by the Code or regulations prescribed thereunder to deposit any tax in a government depository ... and fails to deposit the tax within the time prescribed therefor, a penalty shall be imposed upon such person unless the failure is shown to be due to reasonable cause and not due to willful neglect. The penalty shall be 5% of the amount of the underpayment without regard to the period during which the underpayment continues. IRS Reg. § 301.6656–1(a).

As an employer having an aggregate of $3,000.00 or more of undeposited withheld tax, the Debtor was required by IRS Reg. § 31–6302(c)–1(a)(1)(i)(b) to make the eight monthly deposits in the prescribed timely manner. The Debtor failed to do so, except in the one instance noted above, and was subjected to the aforesaid penalty provisions. The record is silent to show where the Debtor caused to be filed any reasonable cause with the IRS for its failure to meet the periodic deposit requirements. Respecting the Debtor's 1981 third quarter tax obligations, its transmittal letter forwarded with its check in an amount of $63,907.16 for the balance of third quarter withholding requirements clearly indicates the Debtor's awareness of its penalty position (*See,* Ex. F, letter dated January 15, 1982). As a further indication of the penalty status, the IRS' "Transcript of Account" shows an assessment of interest and penalties pertaining to the Debtor's account. (*See,* Ex. G). In brief, the late third quarter payment and the IRS' account record reflecting interest and penalties conclusively establishes evidence of an antecedent debt. Similarly, except for one timely de-

posit made during the 1981 fourth quarter, the Debtor was subjected to penalties due to the deposits being made untimely and its failure to establish reasonable cause therefor. Thusly, pursuant to § 547(a)(4) of the Bankruptcy Code, the Debtor's tax debt was created when it failed to make the timely deposits as required under the IRS regulations. Accordingly, all of the subject transfers, excepting an amount of $2,048.16 deposited for the last deposit period of December, 1981, constituted transfers made on account of an antecedent debt. Therefore, the requirement of § 547(b)(2) has been satisfied. Further, the element of § 547(b)(1) has been met since the transfers were made pursuant to IRS regulations, although untimely made.

The final elements to be satisfied by the Trustee is set forth under § 547(b)(5), which requires the determination of a hypothetical distribution upon liquidation to the affected transferee creditor. In making this determination, the Court must consider the transferee's class and the amount of distribution that class would have received had the transfer not been made. *In re Tenna Corp.*, 801 F.2d 819 (6th Cir.1986).

Pursuant to the statutory distribution scheme provided under § 726 of the Bankruptcy Code and the priority scheme of § 507 of the Bankruptcy Code, the withholding taxes owed to the IRS and to other governmental units would receive a seventh priority pursuant to § 507(a)(7)(C). An addressment of § 547(b)(5) must also factor the administrative expenses of the estate which holds a first priority position under § 507(a)(1). An application of these provisions has been made to the instant matter. As of the time of the present motion filing, the Debtor's account ledgers showed a balance of $135,729.13 (Ex. K) which is to be viewed against known and estimated administrative fee expenses totalling $108,137.00, higher priority wage claims, and other tax claims of equal priority with the IRS' claim. When these matters are viewed in regard to their respective priorities, it is clear that the subject amounts transferred to the IRS allowed it to receive more than it would receive upon liquidation of the Debtor's estate. Thusly, the requirement of § 547(b)(5) has been satisfied.

## III.

Although the IRS does not expressly assert an ordinary course of business exception to the Trustee's allegation of avoidable preferences, it does contend that the Debtor timely made its tax payments when due except for the late third quarter payment of $63,907.06, and that the Debtor timely filed its tax returns. Section 547(c)(2) of the Bankruptcy Code effectively serves as a bar to an avoidance of certain transfers made during the preference period. It specifically provides:

§ 547(c): The Trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. [11 U.S.C. 547(c)(2) ].

Applying the elements of § 547(c)(2) to the matter, *sub judice*, the course of dealings involving the subject transfers was outside the ordinary course of business. Herein, a portion of the transfers made for tax obligations in the third and fourth quarters of 1981 were submitted untimely, resulting in penalties being assessed. (See Exs. A and B and the above payment chart). Further, the transfers were not made in the ordinary course of business or financial affairs of the Debtor and the IRS as (1) the funds transferred were not derived from dedicated trust funds but rather came from funds held in the Debtor's general account; (2) the transfers were not made directly by the Debtor but rather were indirectly made on behalf of the Debtor by its legal counsel from that counsel's client trust account; (3) and the transfers were all made at a time after the Debtor had discontinued business opera-

tions. It is well-established that transfers made by an insolvent debtor, which has ceased business operations, is liquidating its accounts receivable, and which is attempting to dissolve are generally transfers not made in the ordinary course of a debtor's business. *In re Craig Oil Co.,* 785 F.2d 1563 (11th Cir.1986); *See also, In re Peninsula Roofing & Sheet Metal, Inc.,* 9 B.R. 257 (Bankr.N.D.Mich.1981). Further, no segregated trust account was created by the Debtor from which the transfers were to be made, in derogation of the aforementioned IRS regulations. Funds emanating from some other source to pay the withholding tax liabilities are not self-endowed with a trust character once ultimately transferred to the IRS. The subject funds came from sources other than an established trust account as required by IRS regulation. *See, U.S. v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971); *Drabkin v. District of Columbia,* 824 F.2d 1102, 1106 (D.C.Cir.1987); *Slodov v. U.S.,* 436 U.S. 238, 255, 98 S.Ct. 1778, 1789, 56 L.Ed.2d 251 (1978); *In re E & S Comfort, Inc.,* 92 B.R. 616 (Bankr.E.D.Pa. 1988), *citing, In re American International Airways, Inc.,* 83 B.R. 324 (Bankr.E.D. Pa.1988), *aff'd,* C.A. No. 88–3529 (E.D.Pa. August 15, 1988). Prepetition payments of tax obligations within the preference period do not create or revive a statutory trust where such payments were never made from a duly established trust fund account. Thusly, the requirements of an avoidable transfer have been fully established by the movant, and the subject transfers are hereby avoided.

The Trustee further seeks an award of prejudgment interest on the avoidable transfers. Generally, interest on a claim or judgment against the United States is not awardable unless it has expressly waived its sovereign immunity. *U.S. v. Alcea Band,* 341 U.S. 48, 49, 71 S.Ct. 552, 553, 95 L.Ed. 738 (1951). This Court has previously determined the propriety of such matters in view of the express waiver of sovereign immunity as provided under § 106(c) of the Bankruptcy Code. *In re Tenna Corp.,* 43 B.R. 140 (Bankr.N.D.Ohio 1984), *aff'd.* 53 B.R. 493 (D.C.Ohio 1985), *rev'd on other grounds,* 801 F.2d 819 (6th Cir.1986); *see also, Manufacturer's Finance Co. v. Marks,* 142 F.2d 521, 528 (6th Cir.1944), *cert. denied;* 323 U.S. 721, 65 S.Ct. 52, 89 L.Ed. 579 (1944). Prejudgment interest is awardable and, in view of the findings herein, an award of prejudgment interest is hereby made pursuant to allowable interest rates addressed under 28 U.S.C. 1961(a).

## CONCLUSION

Accordingly, the transfers, except as herein noted, are hereby avoided with a return of same to be made to the Trustee forthwith. A rate of interest is hereby awarded and imposed pursuant to provisions of 28 U.S.C. 1961(a). Having so determined, the Trustee is entitled to summary judgment as a matter of law. Rule 7056(c), Bankr.R.

IT IS SO ORDERED.

## AMENDED ORDER

The Memorandum Of Opinion And Order entered by this Court on January 17, 1989, and the separate judgment entered on January 27, 1989 are hereby amended to specify that the amount of the avoided net transfer found to be a preference under 11 U.S.C. § 547(b) is One Hundred Eleven Thousand, Five Hundred and Thirty-nine Dollars and Twenty Cents ($111,539.20).

The Court further awards pre-judgment interest in accordance with 28 U.S.C. § 1961(a) from March 25, 1982, the date on which the complaint was filed. Although 28 U.S.C. § 1961(a) fixes the rate of postjudgment interest, this Court agrees with those cases which find the use of this postjudgment rate appropriate when awarding pre-judgment interest. *See In re Southern Indus. Banking Corp.,* 87 B.R. 518, 523, 17 B.C.D. 922 (Bankr.E.D.Tenn.1988); *Matter of Dayton Circuit Courts No. 2,* 80 B.R. 434, 440, 16 B.C.D. 1219 (Bankr.S.D.Ohio 1987); *In re Baker & Getty Financial Services, Inc.,* 88 B.R. 792, 798 (Bankr.N.D. Ohio 1988). *Accord In re Missionary Baptist Foundation of America,* 69 B.R. 536 (Bankr.N.D.Tex.1987); *In re H.P. King*

*Co., Inc.,* 64 B.R. 487 (Bankr.E.D.N.C. 1986).

IT IS SO ORDERED.