**In re LAKESIDE COMMUNITY HOSPITAL, INC., Debtor.**

**James E. CARMEL, Trustee, Plaintiff,**

v.

**David D. ORR, in his capacity as Cook County Clerk and Edward J. Rosewell, in his capacity as Cook County Collector and Cook County Treasurer, Defendants.**

Bankruptcy No. 91 B 07290.
Adversary No. 95 A 00880.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 3, 1996.

Elenie K. Huszagh, Leon Zelechowski, Ltd., Chicago, IL, Trustee/Plaintiff.

James E. Carmel, Carmel & Marcus, Ltd., Chicago, IL, for trustee.

Jane L. Stuart, Assistant State's Attorney, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Chapter 7 Trustee filed this adversary proceeding against David D. Orr, the Cook County Clerk, and Edward J. Rosewell, the Cook County Collector and Cook County Treasurer (collectively the "County") to recover a pre-bankruptcy tax payment. The Trustee alleges that the $889,826.58 payment to the County from an escrow account constitutes either a preference (Count I) or a fraudulent transfer (Count II). Both the Trustee and the County have filed Motions for Summary Judgment. Because it is unclear whether the funds used to pay these taxes were, in fact, property in which the Debtor, Lakeside Community Hospital, Inc.

had an interest, both motions for summary judgment on Count I will be denied. The County's motion for summary judgment on Count II will be granted and the Trustee's motion for summary judgment denied, however, because even if the funds were property of the Debtor, the payments were made in satisfaction of a debt and were not, therefore, fraudulent transfers.

## UNDISPUTED FACTS

Hilltop Real Estate Investment Co. Partnership ("Hilltop") owned real estate at 311–317 & 365 East North Avenue in Northlake, Illinois. Leyden Community Hospital, Inc ("Leyden") leased that property from Hilltop and operated a hospital there. Churchill, Sterling & Stewart, Ltd. ("CS & S") owned 100% of Leyden's outstanding stock. This Court has found that Leyden is the alter ego of the Debtor. The County does not dispute that finding, and apparently concedes that any property held in Leyden's name was actually the Debtor's property.

The lease between Leyden and Hilltop required Leyden to pay all real estate taxes on the property. Leyden fell behind on its payments to Hilltop and as of March 31, 1991, owed Hilltop $3,466,330.97 for past due rentals.

On January 28, 1991, Leyden, Hilltop, and CS & S entered into an agreement for the sale of the real estate and substantially all of Leyden's assets, including "certain equipment, personal property, inventory, licenses, permits and other intangibles." The total sales price was $5,200,000 and the agreement valued the land, the buildings, and the fixed equipment (Hilltop's assets) at $3,800,000 and the remaining assets (Leyden's assets) at $1,400,000.

The real estate was encumbered by a mortgage. At the closing on February 22, 1991, the purchaser assumed this mortgage and some incidental obligations and deposited $2,341,406.25 into escrow. Assuming without deciding that all obligations assumed by the purchaser were obligations of Hillside, this meant that of the funds deposited into the escrow account, $1,400,000 were funds in which Leyden had an interest and $941,406.25 were funds in which Hilltop had an interest. No accounting of distributions either to or for the benefit of Hilltop from the escrow account was presented to the Court.

From the escrow account, $391,432.98 was paid to the Cook County Collector for "delinquent 1989 taxes and for the then current 1990 first installment taxes" on the real estate. In addition, $498,393.60 was paid to the Cook County Clerk to redeem real estate taxes on the property in the amount of $475,509.92 and to redeem real estate taxes on a second parcel of real estate owned by Hilltop and leased by the Debtor in the amount of $22,883.68. The total amount paid to the County is $889,826.58. The following obligations of Leyden were paid from the escrow account: $671,141.29 to the Internal Revenue Service of the United States to pay Leyden's outstanding federal withholding taxes; $103,939.00 to the Illinois Department of Employment Services to pay Leyden's outstanding unemployment taxes; $72,644.45 to the Illinois Department of Revenue to pay Leyden's outstanding state withholding taxes; and $27,644.45 to Leyden to pay $10,359.00 in outstanding payroll and $17,595.84 in outstanding vacation pay to Leyden's employees. Thus, it is undisputed that of the $1,400,000 of the funds traceable to Leyden, at least $875,679.58 was used to pay obligations of Leyden. This leaves $524,320.42 in funds in the escrow account in which Leyden had an interest. No accounting of how the remainder of Leyden's funds was distributed from the escrow account has been presented to the Court.

## DISCUSSION

### A. Preferential Transfers

■ For the Trustee to recover a preferential transfer, the Trustee must show that the Debtor's interest in property was transferred:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—(A) on or within 90 days before the date of the filing of the petition ...;

(5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In their Motion for Summary Judgment and in their response to the Trustee's Motion for Summary Judgment, the County argues that Hilltop's funds, and not Leyden's, were used to pay the outstanding and delinquent taxes. It is impossible to tell, however, to what extent Leyden's funds may have been used to pay the outstanding real estate taxes to the County. The undisputed facts do not indicate how Hilltop's $941,406.25 and Leyden's $524,320.42 remaining in the escrow account was disbursed. Absent a complete accounting of the distributions made from the escrow account, it is impossible to ascertain how much, if any, of Leyden's funds was used to pay the County.

To the extent that an accounting of these disbursements indicates that Leyden's funds were used to pay the County, and subject to the question discussed in footnote 1 below, the disbursements to the County would constitute preferential transfers under 11 U.S.C. § 547. Hilltop was a creditor of Leyden and benefited from the payment of these real estate taxes. Leyden was the alter ego of Lakeside. Thus, although the County is not a creditor of the Debtor or Leyden, any transfer to the County would have been a transfer for the benefit of Hilltop, a creditor of the Debtor.[1] The transfer would have been made on account of an antecedent debt owed by Leyden before the transfer was made because Leyden was contractually liable to Hilltop for back taxes as well as substantial delinquent rent obligations. Both the Debtor and Leyden were insolvent at the time the transfers were made and the transfers occurred within 90 days prior to the date Lakeside filed for bankruptcy relief. The requirements of subsections (1), (2), (3), and (4) of section 547 are, therefore, satisfied. These transfers enabled Hilltop to receive more than Hilltop would receive in the Chapter 7 liquidation had the transfer not been made and Hilltop received payment of the obligation pursuant to provisions of the Bankruptcy Code. Had these taxes not been paid, Hilltop would have been liable for them and would have had a claim against the estate under the lease for the amount of that obligation. Because unsecured creditors of this estate will receive less than 100% of their claims, Hilltop is better off than it would be if the payment had not been made. Section 547(b)(5) is therefore satisfied.

■■■ The County's argument that the funds fall within the "ordinary course of business" exception of 11 U.S.C. § 547(c)(2) is without merit. The ordinary course of business exception is intended to prevent debtors who are having financial difficulty from giving preferential treatment to their most important creditors to the detriment of other creditors. *In re Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993). It is also to deter creditors from prematurely driving a debtor into bankruptcy because they are aware of the debtor's financial difficulties. *Id.* Thus, the requirement that a payment be made in the "ordinary course of business" under 11 U.S.C. § 547(c)(2) requires that "both the debt and the payment be within the ordinary course of business of both the debtor and the creditor." *Id.*

---

1. This holding, although it follows the plain language of the Bankruptcy Code, raises a troubling question under the peculiar facts of this case. The County had a lien on the real estate securing its tax claim against Hilltop. Once that claim was paid, the County presumably lost that lien. Now it may be required to return these payments to the Debtor's estate, leaving the County with only an unsecured claim against Hilltop. This is obviously a harsh consequence for an innocent stranger that never had any dealings with the Debtor—especially when that stranger is a governmental entity seeking to finance public services. Notwithstanding the findings and conclusions contained in this opinion, the Court may give further consideration to the legal effect, if any, on the Trustee's claim of these unusual circumstances.

Although the payment of all outstanding real estate taxes at a real estate closing may be standard operating procedure for closings, it does not establish that the transaction was within the ordinary course of business under section 547(c)(2). It is hard to imagine when, if ever, the sale of all or substantially all of a debtor's assets would constitute an ordinary course of business transaction. Furthermore, it appears that most of the payment was for delinquent taxes and to redeem the property from tax sales. Payment of taxes years after they fell due is not in the ordinary course of business. *See In re Pullman Constr. Indus. Inc. v. United States (In re Pullman Constr. Indus. Inc.)*, 190 B.R. 618, 625 (Bankr. N.D.Ill.1996) (Schmetterer, J.). Thus, to the extent that the funds used to pay the County were funds in which Leyden had an interest, the payments would constitute an avoidable preference pursuant to 11 U.S.C. § 547(b). A material question of fact exists as to what extent, if any, the funds used to pay the County were property in which Leyden, the alter ego of the Debtor, had an interest and summary judgment is therefore denied.

**B. Fraudulent Transfers**

For the Trustee to recover a fraudulent transfer, the Trustee must either show the transfer was made with an actual intent to hinder, delay, or defraud creditors or show the transfer was made without receiving the reasonably equivalent of the transfer while the debtor was insolvent. 11 U.S.C. § 548(a). In the current instance, the Trustee alleges that the Debtor transferred the funds for no consideration while the Debtor was insolvent. Like section 547(b), section 548(a) requires a "transfer of an interest of the debtor in property." If the funds paid to the County were not the Debtor's property, the payment may not be avoided. Even assuming the Trustee can prove the funds transferred were property of the estate, however, the Trustee's fraudulent transfer claim fails. The Trustee concedes that Leyden and the Debtor were liable for the tax payments, although they were liable to Hilltop and not to the County. Any tax payments made with the Debtor's money satisfied that obligation to Hilltop. Satisfaction of a debt of the Debtor is defined as value in section 548(d)(2)(A). Therefore, any such transfer would have been for "reasonably equivalent value." For that reason, the County's motion for summary judgment on Count II must be granted.

### CONCLUSION

Because a material question of fact exists as to how much, if any, of the funds used to pay the County was property in which the Debtor had an interest, both parties' motions for summary judgment with respect to Count I are denied. If Leyden made these payments to the County it was in satisfaction of a debt owed to Hillside. That satisfaction would constitute the reasonably equivalent value of the amount paid to the County and the payments, therefore, could not be fraudulent transfers under section 548. The County's motion for summary judgment is, therefore, granted and the Trustee's motion is denied with respect to Count II.