**In re VALLEY STEEL PRODUCTS COMPANY, INC., et al., Debtors.**

**THE OFFICIAL PLAN COMMITTEE, on behalf of the ESTATE OF VALLEY STEEL PRODUCTS COMPANY, INC., et al., Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 4:94CV1310–DJS.**

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 14, 1997.

Mark H. Zoole, Weier, Hockensmith & Sherby, P.C., St. Louis, MO, for defendant.

Robert E. Eggmann, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for Official Plan Committee.

### MEMORANDUM OPINION

STOHR, District Judge.

This matter is before the Court on an appeal by the Official Plan Committee ("the Committee"), on behalf of the Estate of Valley Steel Products Co., Inc., et al., from a final Order of the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division, *In re Valley Steel Products Company, Inc., et al.,* Adversary No. 93–4366–293 (Bankr.E.D. Mo. June 2, 1994). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). After careful consideration, for the reasons set forth below, the Court reverses the decision of the Bankruptcy Court.

### A. Procedural Background

On February 4, 1992, Valley Steel Products Co., Inc. and several affiliated companies ("debtors") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* On March 8, 1993, the Bankruptcy Court confirmed a plan of reorganization which provided that the Committee would have standing to prosecute, on behalf of the consolidated estate of the affiliated Valley Steel Companies, causes arising under Chapter 5 of the Bankruptcy Code. On June 9, 1993, the Committee filed its complaint to avoid and recover preferential transfers against the United States. The Committee claimed that Valley Industries, Inc. ("debtor") had paid the United States $50,000.00 in violation of § 547(b) of the Bankruptcy Code, which permits the trustee to avoid certain transfers. The preferential nature of the transfers was not in dispute, but rather the issue was whether the transfers were excepted from avoidance under defenses set forth in § 547(c). On June 2, 1994, the Bankruptcy Court denied the Committee's complaint to avoid and recover preferential transfers finding that the two transfers in question were made in the ordinary course of business within the provisions of § 547(c)(2). The Committee filed this appeal.

### B. Issue on Appeal

The issue on appeal, as framed by appellant is:

> Whether the Bankruptcy Court erred as a matter of law in holding that the preferential transfers to the United States of America were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2).

Record and Issues on Appeal, p. 2.

### C. Standard of Review

In reviewing a judgment of a bankruptcy court, a district court reviews the bankruptcy court's legal conclusions de novo and its findings of fact under a clearly erroneous standard. *In re Muncrief,* 900 F.2d 1220, 1224 (8th Cir.1990). Because a bankruptcy court's interpretation of § 547(c)(2) is a factual analysis, the Court will review the Bankruptcy

Court's decision for clear error. *In re U.S.A. Inns of Eureka Springs, Arkansas,* 9 F.3d 680, 685 (8th Cir.1993) (citation omitted); *see also In re Barefoot,* 952 F.2d 795, 800–01 (4th Cir.1991) (the applicability of the exception in § 547(c)(2) is a factual determination made by the court, thus the findings on this point may only be set aside for clear error); *In re Yurika Foods Corp.,* 888 F.2d 42, 45 (6th Cir.1989) (whether a payment is made in the ordinary course of business is a factual determination which should not be set aside unless clearly erroneous). A finding is "clearly erroneous" when although there is evidence to support it, the court reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 500 (8th Cir.1991).

### D.  Undisputed Facts

The undisputed facts, which were adopted by the Bankruptcy Court and which this Court adopts, are as follows:

1.  On December 17, 1990, the Internal Revenue Service ("IRS") assessed against Valley Industries, Inc., additional corporate income tax of $671,499.00 for the tax period ending November 30, 1975.

2.  Soon after the assessment of the additional corporate income tax for the period ending November 30, 1975, the Service was contacted by counsel for the corporation who tendered a large payment of which $25,623.00 was applied to the income tax liability. With the payment, counsel requested an arrangement to make three quarterly payments towards the corporate income tax liability in return for which the Service would forego the filing of a notice of federal tax lien and the making of levies. The Service agreed to the arrangement, under which the debtor agreed to pay $335,000 in April, June and September, 1991.

1.  The following summarizes all payments received with respect to this liability and applied to the tax and to accrued interest and penalties. The August 15, 1991 payment was the transfer of an overpayment from another tax period.

3.  Valley Industries, Inc. asked to amend the agreement when it came time to make the last payment. Under the amendment, the debtor paid $150,000 on October 1, 1991. Monthly payments of $25,000 were to be paid thereafter until the balance was paid. Again, the Service agreed to forego the filing of a notice of federal tax lien and the making of levies.

4.  Valley Industries, Inc. made three monthly payments before filing its petition in bankruptcy on February 4, 1992.[1]

5.  It is customary practice for the Internal Revenue Service to enter into an installment payment agreement with a delinquent taxpayer whereby the taxpayer agrees to pay its liability over time. It is also customary practice for the Internal Revenue Service to modify those agreements as necessary.

6.  This was the first time Valley Industries, Inc. had entered into or modified an installment payment agreement with the Internal Revenue Service.

7.  The two payments at issue were made for an antecedent debt.

8.  Under the plan, general unsecured creditors will receive distributions of less than 100 percent of their claims.

9.  The debtor was insolvent within 90 days proceeding the filing of the bankruptcy.

10.  Also filing Chapter 11 petitions on February 4, 1992, were Valley Steel Products Company, Inc., VSPC Transportation, Inc., V.S.P.C. Redevelopment Corp. and Performance Pipe and Steel, Inc.

11.  Joint administration of the cases was ordered on February 27, 1992.

12.  On February 5, 1992, the Office of the U.S. Trustee appointed the Official Unsecured Creditors' Committee in the Valley Steel Products Company, Inc. bankruptcy proceedings.

| Date | Amount |
| --- | --- |
| 01/28/91 | $ 25,623.60 |
| 04/01/91 | 335,000.00 |
| 07/01/91 | 335,000.00 |
| 08/15/91 | 4,127.00 |
| 10/01/91 | 150,000.00 |
| 11/01/91 | 25,000.00 |
| 12/03/91 | 25,000.00 |
| 01/02/92 | 25,000.00 |

13. By order entered March 15, 1993, the debtors' liquidating plan was confirmed, and the cases were substantively consolidated.

14. The Service's second amended proof of claim, filed on March 4, 1993, sets forth a general unsecured claim for $200,-581.61.

15. On February 26, 1993, the Plan Committee made a demand on the Service for return of the December 3, 1991 and January 2, 1992 payments, totalling $50,-000. That demand was received by the Internal Revenue Service on March 1, 1993 and was rejected by the Service by letter dated March 19, 1993.

\* \* \* \* \* \*

## E. Discussion

### Bankruptcy Code §§ 547(b) and 547(c)(2)

Section 547(b) of the Bankruptcy Code provides that certain transfers made within a period preceding the petition for bankruptcy may be avoided as preferences. Under § 547(b), a bankruptcy trustee may avoid the transfer to a creditor of an interest in property that is made on or before 90 days before the filing of the petition, while the debtor was insolvent, on account of an antecedent debt. 11 U.S.C. § 547(b). Moreover, the transfer must enable the creditor to receive more than it would have received in a bankruptcy liquidation. It is undisputed that the transfer of the $50,000.00 constituted a preference within the meaning of § 547(b). However, 11 U.S.C. § 547(c)(2) is an exception which permits the transferee of a preferential payment to prevent avoidance of the transfer.

■ Section 547(c) (2) provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \*

(2) to the extent such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and transferee; and

(C) made according to ordinary business terms.

For a payment to qualify under the § 547(c)(2) exception, the transferee must prove each of the' three statutory elements by preponderance of the evidence. 11 U.S.C. § 547(g); *In re U.S.A. Inns of Eureka Springs, Arkansas,* 9 F.3d at 682.

### The Bankruptcy Court's Decision

The Bankruptcy Court found that the government established the three elements necessary to prevail under § 547(c)(2), thus, the Committee could not avoid the challenged transfers. The Bankruptcy Court found that the United States demonstrated that: (1) the debt underlying the challenged payments was made in the ordinary course of business between the government and the debtor; (2) the debtor made the challenged transfers in the ordinary course of business for both itself and the IRS; and (3) the challenged payments were made according to ordinary business terms.

In finding that the debtor made the challenged transfers in the ordinary course of business for both itself and the IRS, the Bankruptcy Court stated:

The parties have stipulated that the IRS customarily enters into installment payment agreements with delinquent taxpayers and that the Service routinely modifies those agreements. The Plan Committee disputes the fact that the payments made pursuant to the negotiated, and then modified, settlement between Valley and the IRS were made in the ordinary course of Valley's business. The Committee points out that through its sixty-year history, Valley paid its taxes on a quarterly and annual basis and, prior to the agreement of 1990, had never before entered into an installment payment plan to cure a tax arrearage. The Committee concludes that the payments made pursuant to the settlement the Debtor and the Government negotiated, therefore, were not made in the ordinary course of Valley's business. The Court disagrees.

\* \* \*

In the case at bar, Valley entered into an agreement with the IRS to pay, in a number of installments, the back taxes it owed. After making two payments under the original terms of the agreement, Valley asked the Government to modify the payment schedule; the Government did. Before filing its petition in bankruptcy, Valley made three monthly payments to the IRS in accord with the parties' modified payment plan. Given these facts, the Court concludes that Valley made the challenged payments, the last two monthly payments made pursuant to the modified payment plan, in the ordinary course of its business. These payments were made in the amount and at the times prescribed by the payment plan that Valley originally negotiated with the Government and more than a year before the filing of its petition in bankruptcy.

Op., pp. 12–13.

### Analysis

The underlying facts in this case are undisputed and the only question for the Court is whether the two payments in question were made within the ordinary course of business. The Committee argues that the United States failed to provide any cognizable evidence that the payments in question were made in the ordinary course of business of both the debtor and the United States as is required by § 547(c)(2)(B). The Committee also argues that it was not common or ordinary for the debtor to enter in a workout agreement for delinquent taxes and that the United States is unable to show the consistency of transactions between the parties necessary to fall within this exception. Finally, the Committee argues that the arrangement between the parties was merely a settlement for taxes that were past due and that such a settlement agreement is not made within the ordinary course of business.

■ After an examination of the briefs and the precedent, the Court is convinced that the Bankruptcy Court clearly erred·in finding that the two transfers in question were made in the ordinary course of business or financial affairs of the debtor as required by § 547(c)(2)(B). The exceptions found in § 547(c) are to be narrowly construed. *In re Writing Sales Ltd. Partnership,* 96 B.R. 175, 178 (Bankr.E.D.Wis.1989). The legislative history of § 547(c)(2) states that the purpose of the exception is:

> ... to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. *In the tax context, this exception will mean that a payment of taxes when they are due, either originally or under an extension ... will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference, if the other elements of a preference are present. In that case, the tax debt would be antecedent debt and would not fall under this exception.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), U.S.C.C.A.N., pp. 5787, 6329 (emphasis added). In the present case, it is undisputed that the payments in question for back taxes included penalties. Op., p. 2, n. 1. The tax payments in question were not simply being paid as they became due or under an extension.

In *In re Pullman Constr. Indus., Inc. v. United States,* 190 B.R. 618 (Bankr.N.D.Ill. 1996), *aff'd,* 210 B.R. 302 (N.D.Ill.1997), the debtor sought to recover allegedly preferential payments the debtor made to the IRS. In *In re Pullman,* the debtor was required to deposit certain withholding taxes in a special fund in trust for the United States and to withhold certain other taxes. When the debtor began experiencing cash flow shortages, it fell behind in making certain required deposits. During the 90 days prior to the bankruptcy, the debtor sent checks directly to the IRS. Although the payments at issue were preferences, the IRS argued that the payments were made in the ordinary course of business. The bankruptcy court stated:

> A late payment is normally outside of the ordinary course of business; however this is not without exception.... Neither the Bankruptcy Code nor the legislative histo-

ry surrounding § 547 indicates that late payments can never be in the ordinary course....

However,

"[L]ate payment of taxes after a penalty attaches would apparently not be protected under this section. The imposition of a penalty would seem to remove the payment from the ordinary course of at least the creditor's business." *Norton Bankruptcy Law and Practice, 2d* § 57:16 (1994) (interpreting H.R.Rep. No. 595 95th Cong. 1st Sess. 373 (1977)).

*In re Pullman,* 190 B.R. at 625. The bankruptcy court held that:

the deposits in question ... were late, and penalties were imposed thereon before the payments were made. Therefore, [the debtor's] three direct payments of nontrust taxes to the IRS ... were not made in the ordinary course of business within the meaning of § 547(c)(2).

*Id.* at 625.

■ In the present case, it is undisputed that the two payments in question were made for back taxes (sixteen years overdue) and included accrued interest and penalties. Such payments, therefore, were not made in the ordinary course of the debtor's business. *See Carmel v. Orr,* 200 B.R. 853, 856 (Bankr. N.D.Ill.1996) *citing In re Pullman Constr. Indus., Inc. v. United States* ("Payments of taxes years after they fell due is not in the ordinary course of business.").

The United States relies upon *First Software Corp. v. Micro Educ. Corp. of America,* 103 B.R. 359 (D.Mass.1988) to support its assertion that payments made pursuant to a payment agreement entered into between a debtor and creditor can qualify for the ordinary course of business exception. In *First Software Corp.,* the debtor had previously entered into two agreements which were substantially the same as the agreement in question. Here, the debtor and the United States had never entered into an installment payment plan prior to the agreement in question. Moreover, in the present case, the transfers were not part of a long standing pattern between the parties. It is undisput-

ed that the installment payment agreement in question was modified—the relationship changed as the debtor's financial condition worsened. *First Software Corp.* is clearly distinguishable.

The fact that the payments in question were late and included penalties is not the sole reason the payments fall outside the ordinary course of business exception. It is undisputed that the payments to the United States were made pursuant to a settlement agreement entered into between the debtor and the IRS. Payments made pursuant to a settlement agreement, which appear to be the result of antecedent debt, are not in the ordinary course of business as defined in 11 U.S.C. § 547(c)(2). *In re Daikin Miami Overseas, Inc.,* 65 B.R. 396, 398 (S.D.Fla. 1986). The ordinary course of business exception is intended to protect recurring, customary trade transactions, not payments in settlement of contractual claims. *See generally 3A Bankruptcy Service, L Ed* § 33:199, pp. 327–329 (1993) (payments made in settlement of litigation are not made within the ordinary course of business as defined in 11 U.S.C. § 547(c)(2)). Although the United States argues that these cases are inapplicable because the IRS took "no forced collection action prior to the installment payment," the United States cites no authority in support of this argument. Brf. of Appellee, p. 13. Thus, because the payments were made pursuant to a settlement agreement, they do not fall within the ordinary course of the debtor's business.

For both of the foregoing reasons, the Bankruptcy Court clearly erred in finding that the December 3, 1991 transfer of $25,000 and the January 2, 1992 transfer of $25,000 were made in the ordinary course of the debtor's business. Based upon the undisputed facts, the two payments were made pursuant to a settlement agreement for back taxes and included the assessment of penalties. Thus, the undisputed facts demonstrate that the payments were not made in the ordinary course of the debtor's business.

■ As an alternative theory to affirm

the decision of the Bankruptcy Court,[2] the United States argues that the payments are not subject to avoidance because they were made as part of a contemporaneous exchange for value under 11 U.S.C. § 547(c)(4).[3] This argument fails. In finding that the exchange for value exception did not apply, the Bankruptcy Court stated:

> The Government argues that the Debtor received contemporaneous new value when it made a challenged payment to the IRS because each payment reduced the amount of the statutory lien the Government held against the Debtor.

Op., p. 10. The Bankruptcy Court disagreed, stating:

> Neither the Government's forbearance from perfecting the liens it held against Valley nor the reduction in the amount of the lien that the Government could file against Valley following acceptance of the challenged payments fits within the Code's definition of new value. Section 547(c)(4) does not bar valley from avoiding the challenged transfers.

Op., pp. 10–11. The Court agrees. Forbearance from exercising a preexisting right does not constitute new value under 11 U.S.C. § 547(a)(2). *In re Air Conditioning, Inc. of Stuart,* 845 F.2d 293, 298 (11th Cir.1988).

### F. Costs and Pre–Judgment Interest

The Committee seeks a judgment "in the amount of $50,000.00 plus cost[s] and interest at a rate of 9% from the date of the Complaint." Brf. of Appellant, p. 15; Reply Brief, p. 8. Whether the Committee is entitled to an award of costs or interest against the United States is an issue which was not ruled upon below and thus, should be remanded for an initial determination.

**2.** Based upon subsequent amendments to the Bankruptcy Code, the United States has withdrawn its second alternative argument that the decision of the Bankruptcy Court should be affirmed on the basis of sovereign immunity. Sur-Reply Brf., pp. 2–3.

**3.** Section 547(c)(4) states:
(c) The trustee may not avoid under this section a transfer—
* * *

### G. Conclusion

The Bankruptcy Court clearly erred in finding that the payments in question were made in the ordinary course of business or financial affairs of the debtor. The decision of the Bankruptcy Court will be reversed and the Committee's complaint to avoid and recover the December 3, 1991 and January 2, 1992 preferential transfers should be granted. The case will be remanded for further proceedings consistent with this opinion.

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;