**In re PULLMAN CONSTRUCTION INDUSTRIES, INC., et al., Debtors.**

**PULLMAN CONSTRUCTION INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America and State of Illinois, Dept. of Revenue, Defendants.**

**Bankruptcy No. 87 B 06441–44. Adv. No. 92 A 00015.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 30, 1995.

■■■■■■■■■■■

Stephen T. Bobo, D'Ancona & Pflaum, Chicago, IL, for plaintiff.

Joel Nathan, Office of the U.S. Trustee, Chicago, IL.

Charles J. Cannon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant U.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

This Adversary proceeding relates to the bankruptcy proceeding filed by plaintiff under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C.

Pullman Construction Industries, Inc. and various subsidiaries (collectively "Pullman" or "Debtor") filed the instant two-count Complaint to recover certain allegedly preferential tax payments made pre-petition to Defendants, the United States of America (as to payments to the Internal Revenue Service ("IRS")) ("United States") in Count I, and the State of Illinois (as to payments to the Department of Revenue) ("Illinois") in Count II. Illinois settled its dispute and Count II was dismissed. On the remaining count, Pullman and the United States agreed to submit this case for trial upon an agreed statement of facts. Such trial having been held and concluded on a stipulated record, and based upon all evidence presented and the arguments and briefing of counsel, this Court now makes and enters the following Findings of Fact and Conclusions of Law. Pursuant thereto and by separate order, judgment is entered in favor of the United States and against Pullman.

### FINDINGS OF FACT

1. On May 1, 1987 ("petition date"), Pullman Construction Industries, Inc. and three wholly-owned subsidiaries, Pullman Sheet Metal Works, Inc., Preferred Piping, Inc., and Mid–City Architectural Iron Co. (collectively "Pullman" or "Debtor"), filed petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Their cases have been jointly administered. No Chapter 11 trustee was appointed and no Plan has been confirmed, but, following extensive litigation over several issues, the case has been held open to enable the Debtor to pursue remaining causes of action under the Bankruptcy Code. Pullman has administered its affairs throughout as debtor-in-possession pursuant to 11 U.S.C. §§ 1107–08.

2. Prior to its filing in bankruptcy, Pullman operated as a heating, ventilating, and air conditioning ("HVAC") contractor, selling its services primarily to commercial, industrial, and governmental entities. Pullman also designed and manufactured a patented fire damper and related products for the nuclear power industry. Pullman maintained its base of operations in Chicago, Illinois, and was incorporated under the laws of the State of Illinois. *See generally In re Pullman Constr. Indus., Inc.,* 107 B.R. 909, 912 (Bankr.N.D.Ill.1989) (Schmetterer, J.).

3. Pullman filed the instant two-count Complaint on January 7, 1992. Count I originally sought to recover eight allegedly preferential payments, totalling in excess of $1,000,000.00, that Pullman made to the IRS to satisfy federal employment taxes. Pullman has since stipulated that the last three transfers were not preferential and now seeks to recover only the first five payments which total $610,143.64.

4. Upon completion of discovery, Pullman and the United States agreed to submit this proceeding for trial upon an agreed statement of facts. On November 18, 1994, they submitted a joint pre-trial statement which included a statement of stipulated facts and various stipulated exhibits. They subsequently filed an amended joint pre-trial statement and stipulation on December 27, 1994. Both parties thereupon rested, having stipulated to trial held on the foregoing record and factual stipulation. The parties then filed proposed findings of fact and conclusions of law to serve as their final arguments. Trial thereupon concluded, and this case is

ready for decision on the record and arguments presented.

### Pullman's Federal Employment Taxes

5. Prior to filing in bankruptcy, Pullman employed 595 people throughout its operations. Ex. 4, line 1a.[1] As an employer, Pullman was required to deduct and withhold income and social security taxes from gross wages earned by its employees. 26 U.S.C. §§ 3102(a), 3402(a) (1995). After Pullman withheld such taxes, but before it remitted those funds to the IRS, it held such taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501 (1995). Hence, such taxes are commonly referred to as "trust fund taxes." *See Begier v. Internal Revenue Serv.*, 496 U.S. 53, 55–56, 110 S.Ct. 2258, 2261, 110 L.Ed.2d 46 (1990).

6. Pullman itself was required to pay various other taxes, including social security taxes in an amount equal to its employees' withheld social security taxes, *compare* 26 U.S.C. § 3111 (1995) *with* 26 U.S.C. § 3101 (1995), corporate income taxes, 26 U.S.C. § 11 (1995), interest, and penalties. However, unlike withholding taxes, funds set aside to pay these types of obligations are not specified by statute to be held in trust for the United States ("non-trust fund taxes").

7. Although Pullman collected trust-fund taxes at the end of each salary period, it was not required to remit withheld amounts to the IRS until the end of each quarter when Pullman was required to file its "Employer's Quarterly Federal Tax Return" (Form 941). In the interim, IRS regulations required Pullman to deposit trust fund taxes with a qualified federal tax depository institution shortly after each payroll was made. Tax deposits associated with each payroll were required to be made within three banking days after the end of each one-eighth month period in which the payroll was issued, 26 C.F.R. § 31.6302–1(c) (1995), unless tax liability equaled or exceeded $100,000.00 for the period, in which case Pullman was required to deposit such taxes within one banking day after the payroll was made, 26 C.F.R. § 31.6302(c)–1 (1995).

8. Upon failure of an employer to make such deposits in a timely fashion, the IRS is authorized to assess a failure-to-deposit penalty equal to 10% of the amount not timely deposited, unless either the underdeposit was less than 5% of taxes due or the taxpayer established a reasonable cause for underdeposit. 26 C.F.R. § 301.6656–1 (1995).

9. The IRS further has statutory authority to assess a penalty against any corporate officer responsible for collecting trust fund taxes equal to 100% of the underdeposit. 26 U.S.C. §§ 6671–72 (1995). Officers are not personally liable, however, for failure to pay non-trust fund taxes. *United States v. Plummer (In re Plummer)*, 174 B.R. 284, 285 (Bankr.C.D.Cal.1992); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir.1988).

10. Prior to the end of 1986, Pullman regularly deposited amounts sufficient to pay its trust fund taxes in a bank qualified as a federal tax depository. Stip. 7. In December 1986, Pullman sent one payment directly to the IRS to make up for a deposit that it had missed earlier that month. *Id.*

### Pullman's Employment Tax Liability for the First Quarter of 1987

11. During the first quarter of 1987 (January 1 through March 31), Pullman employees earned $5,524,839.37 in gross wages. This finding is supported by Pullman's quarterly tax return (Form 941) for that period, which reads in part: "[t]otal wages and tips subject to withholding, plus other compensation ... $5,524,839.37." Ex. 4, line 2. Of the $5,524,839.37 in gross wages earned by its employees for the quarter, Pullman withheld $940,125.93 in federal individual income taxes. This finding is also based on Pullman's quarterly return (Form 941) for that period, which reads: "[t]otal income tax withheld from wages ... $940,125.93." Ex. 4, line 3.

12. Pullman now argues that the amount of taxes reported by Pullman on its own return as having been withheld does not support a finding that it withheld that

---

1. All references to "Ex." are references to stipulated exhibits attached to Joint Pretrial State-ment. "Stip." refers to the factual stipulation of the parties.

amount, but of course that return represents an admission to the United States as to data contained therein. Both parties stipulated to the admissibility of Pullman's quarterly return for that period in their amended joint pretrial statement. Stip. 17.

13. Pullman further reported total social security or "Federal Insurance Contribution Act" ("FICA") tax liability for the quarter equal to $787,056.97. Ex. 4, line 6. Under 26 U.S.C. §§ 3101 and 3111, Pullman was to have withheld one-half that amount, or $393,-528.48, from gross wages earned by its employees and was itself liable for the remaining one-half. Although there is evidence that Pullman withheld at least a portion of the required amount, see Findings 20(b), 21(b), and 22(b), there is no evidence in the limited record presented that Pullman properly withheld the entire $393,528.48 required.

## Pullman's Payments to IRS

14. In late 1986 and early 1987, Pullman experienced severe cash flow shortages and operating losses that would eventually snowball into financial collapse. See generally Pullman, 107 B.R. at 912. By February 1, 1987, ninety days before filing in bankruptcy, Pullman had fallen behind in making its required deposits of trust fund taxes for the first quarter of 1987.

15. During February, March, and April 1987 (within 90 days prior to filing of the bankruptcy on May 1, 1987), Pullman sent eight checks, totalling $1,031,790.64, directly to the IRS. Stips. 8, 9. Those checks were received, collected, and applied by the IRS as follows:

| CHECK NO. | CHECK DATE | AMOUNT | DATE RECEIVED BY IRS | APPLICATION OF PAYMENTS BY IRS |
|---|---|---|---|---|
| 11430 | 2/27/87 | $146,178.97 | 3/2/87 | To Non–Trust Fund Taxes Due |
| 11431 | 2/27/87 | $149,153.83 | 3/2/87 | To Non–Trust Fund Taxes Due |
| 11841 | 3/18/87 | $145,094.84 | 3/20/87 | To Non–Trust Fund Taxes Due |
| 12224 | 3/27/87 | $ 50,000.00 | 3/31/87 | To Non–Trust Fund Taxes Due |
| 12289 | 4/03/87 | $119,716.00 | 4/07/87 | To Non–Trust Fund Taxes Due |
| 12290 | 4/03/87 | $127,160.00 | 4/07/87 | To Trust Fund Taxes Due |
| 12330 | 4/10/87 | $100,000.00 | 4/15/87 | To Trust Fund Taxes Due |
| 12350 | unknown | $194,487.00 | 4/16/87 | To Trust Fund Taxes Due |

Stips. 8, 11–12, 27, 29, 31, 33–34, 36, 37, 38.

16. Pullman did not designate application of the first four payments. Therefore, the IRS credited those payments to the nontrust fund portion of Pullman's tax liability for the first quarter of 1987 to ensure immediate collection of that portion of Pullman's tax debt not secured by the trust obligation of its "responsible" officers. Stip. 12. Such application was made by the IRS pursuant to widely-documented and court-approved internal procedures, see, e.g., United States v. Schroeder, 900 F.2d 1144, 1146–49 (7th Cir. 1990) and Avildsen v. United States (In re Avildsen Tools & Mach., Inc.), 794 F.2d 1248, 1251 (7th Cir.1986) (IRS treats any payments made on a corporate tax liability account to represent payment of non-trust fund portion of tax liability unless payment was voluntary and taxpayer designated different application of payment). See IRS Policy Statement P–5–60, May 5, 1984, reprinted in 1 Internal Rev. Manual (CCH) 1305–14; see Sotir v. United States, 978 F.2d 29, 30–31 (1st Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1388, 122 L.Ed.2d 762 (1993); Muntwyler, 703 F.2d at 1032; Liddon v. United States, 448 F.2d 509, 512 (5th Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

17. Upon advice of bankruptcy counsel in late March 1987, Pullman placed restrictive designations for application on the last four checks. Stip. 11. It specified that those payments could be applied only to the trust fund portions of its tax liability. Id. The

IRS applied the last three payments accordingly, but—contrary to Pullman's instructions—applied the first check, dated April 3, 1987, in the amount of $119,716.00, to non-trust fund liabilities for the first quarter of 1987. *Id.*

18. Pullman contends that it may recover as preference payments the first five payments, listed in Finding No. 15, totalling $610,143.64 plus pre-judgment interest, under 11 U.S.C. §§ 547(b) and 550. Pullman no longer contends that the final three payments are recoverable because those funds were designated by Pullman and applied by the IRS to the trust fund portion of its tax liability. *See Begier,* 496 U.S. at 59, 110 S.Ct. at 2263.

19. The first payment sought to be recovered by Pullman is the payment of $146,178.97 made by Pullman by check no. 11430, dated February 27, 1987. Stip. 27.

a. That check represented the exact amount of Pullman's employment tax liability as calculated by Pullman for the period ending February 1, 1987. *Id.* Although Pullman should have deposited such funds on the first banking day after the end of the salary period, 26 C.F.R. § 31.6302(c)–1, it failed to so deposit and instead sent payment directly to the IRS twenty-six days later.

b. Of the $146,178.97 in employment taxes paid, $79,667.95 represented income taxes withheld by Pullman for that period and $66,511.02 represented the combined total of social security taxes withheld and Pullman's matching share of social security taxes. This finding is supported by the worksheets included in the stipulated record which were used to calculate Pullman's weekly payroll and tax liability requirements. Ex. 7, p. 1. Thus, $112,923.45 ($79,667.95 + ½ of $66,511.02) represented Pullman's payment of trust fund taxes for that period and $33,255.51 represented Pullman's matching share of social security taxes. Pullman did not, however, designate that the payment be applied to either the trust or non-trust fund portion of its tax liability. Stip. 12.

c. The IRS received Pullman's check for $146,178.97 on March 2, 1987, and credited those funds to Pullman's employment tax liability for the first quarter of 1987. Stips. 8, 11. The IRS allocated the entire amount to the non-trust fund portion of Pullman's tax liability for the first quarter of 1987. *Id.*

20. The second payment sought to be recovered by Pullman was the payment of $149,153.83 made by Pullman by check no. 11431, dated February 27, 1987. Stip. 29.

a. That check represented the exact amount of Pullman's employment tax liability as calculated by Pullman for the period ending February 15, 1987. *Id.* Although Pullman should have deposited such funds on the first banking day after the end of the salary period, 26 C.F.R. § 31.6302(c)–1, it failed to so deposit and instead sent payment directly to the IRS twelve days later.

b. Of the $149,153.83 in employment taxes paid, $82,141.45 represented income taxes withheld by Pullman for that period and $67,012.38 represented the combined total of social security taxes withheld and those owed separately by Pullman. Ex. 7, p. 2. Thus, $115,647.64 ($82,141.45 + ½ of $67,012.38) represented Pullman's payment of trust fund taxes for that period and $33,506.19 represented Pullman's matching share of social security taxes. Pullman did not, however, designate to the IRS that the payment be applied to either the trust fund or non-trust fund portion of its tax liability. Stip. 12.

c. The IRS received Pullman's check for $149,153.83 on March 2, 1987, and credited those funds to Pullman's employment tax liability for the first quarter of 1987. Stips. 8, 11. The IRS allocated the funds to the non-trust fund portion of Pullman's tax liability for the first quarter of 1987. *Id.*

21. The third payment sought to be recovered by Pullman was the payment of $145,094.84 made by Pullman by check no. 11841, dated March 18, 1987. Stip. 31.

a. Of that amount, $144,000.11 represented Pullman's employment tax liability as calculated by Pullman for the period ending March 8, 1987, *id.,* and $1,094.73 represented interim taxes accrued at an earlier date but, for reasons unknown, not recorded previously. Ex. 7, p. 3. Although Pullman should have deposited such funds on the first banking day after the end of the salary period in

which they accrued, 26 C.F.R. § 31.6302(c)–1, it failed to so deposit and instead sent payment directly to the IRS on March 18, 1987.

b. Of the $144,000.11 in employment taxes accrued for wages paid that period, $79,620.07 represented income taxes withheld by Pullman and $64,380.04 represented the combined total of social security taxes withheld and those separately owed by Pullman. *Id.* Of the interim taxes, $603.29 represented income taxes withheld and $491.44 represented combined social security taxes. *Id.* Thus, $112,659.10 ($79,620.07 + ½ of ($64,380.04) + $603.29 + ½ of ($491.44)) represented Pullman's payment of trust fund taxes as calculated that period and $32,435.74 ($32,190.02 + $245.72) represented Pullman's requisite share of social security taxes. Pullman did not, however, designate that the payment be applied to either the trust or non-trust fund portion of its tax liability. Stip. 12.

c. The IRS received Pullman's check for $145,094.84 on March 20, 1987, and credited those funds to Pullman's employment tax liability for the first quarter of 1987. Stips. 8, 11. The IRS allocated the funds to the non-trust fund portion of Pullman's tax liability for the first quarter of 1987. *Id.*

22. In summary, the first three payments are allocable as follows:

| Check No. | Amount | Trust Fund Proceeds | Non–Trust Fund Proceeds |
|---|---|---|---|
| 11430 | $146,178.97 | $112,923.45 | $33,255.51 |
| 11431 | $149,153.83 | $115,647.64 | $33,506.19 |
| 11841 | $145,094.84 | $112,659.10 | $32,435.74 |
| | $440,427.64 | $341,230.19 | $99,197.44 |

23. The fourth payment sought to be recovered by Pullman was the payment of $50,000.00 made by Pullman to the IRS by check no. 12224, dated March 27, 1987. Stip. 33.

a. The amount of this check does not correlate to the amount of any particular tax deposit that Pullman had failed to make. *Id.* Pullman's tax return for the first quarter of 1987 does not list this $50,000.00 payment among the payments it made for that quarter. Stip. 33; Ex. 7.

b. As with the first three payments, Pullman did not designate application to either the trust or non-trust fund portion of its tax liability. Stip. 12.

c. The undesignated payment of $50,000.00 was applied by the IRS to Pullman's employment tax liability for the first quarter of 1987. Stip. 33. The IRS allocated this payment to the non-trust fund portion of Pullman's tax liability for the first quarter of 1987. Stip. 34.

24. The fifth and final payment sought to be recovered by Pullman was the payment of $119,716.00 made by Pullman to the IRS by check no. 12289, dated April 3, 1987. Stip. 35.

a. On the record presented, the amount of this check does not correlate to the amount of any particular tax deposit that Pullman had failed to make.

b. Pursuant to advice of bankruptcy counsel, Pullman designated the entire amount of this check for application solely to the trust fund portion of its employment tax liability for wages paid during the first quarter ending of 1987. Stip. 34. The IRS nevertheless allocated the payment to the non-trust fund portion of Pullman's tax liability for the first quarter of 1987. *Id.*

25. The IRS assessed penalties against Pullman for its repeated failure to deposit trust fund taxes withheld for the first quarter of 1987 with a qualified depository as proscribed by IRS regulations. Stip. 10. Pullman did not seek a reasonable cause exception for its failure to make timely deposits.

26. The IRS issued a notice of intent to levy to Pullman on or about April 11, 1987, after the IRS received the five above-described checks. Stip. 18. There is no direct evidence that Pullman ever received the notice, but the stipulated record contains a copy of an IRS transcript reflecting issuance of the notice to Pullman for transmittal to its regular business address. Ex. 5. The notice was preceded by one or more warning letters from the IRS alerting Pullman that it was in default on its tax liabilities and asking a Pullman representative to call the IRS office, Stip. 18, but there is no direct evidence that the IRS properly addressed and mailed the letters or that Pullman in fact received them.

27. Pullman filed its Chapter 11 petition on May 1, 1987. Pullman's assets were sold by its secured lender, Wells Fargo Bank, in November 1989, after this Court modified the automatic stay to so permit. Stip. 20. Wells Fargo Bank received less than the amount of its debt from the sale of Pullman's assets. *Id.* Thus, there are no assets left in the estate to distribute to remaining creditors unless this case proves successful. Stip. 21.

28. The United States has filed an amended claim against the Pullman estate, reflecting a total of $1,012,413.13 in pre-petition employment tax liability owed for the fourth quarter of 1986 and the first two quarters of 1987. Ex. 6. The amended proof of claim further reflects penalties in the amount of $165,868.89 assessed against Pullman in connection with its failures to timely deposit federal employment taxes. *Id.*

29. Pullman was insolvent at all times during 1987, including the 90–day preference period, in that the value of its assets was substantially less than the amount of its liabilities. Stip. 19.

30. Receipt of the five contested payments from Pullman enabled the United States to receive more than it would have received if Pullman had been liquidated in a Chapter 7 proceeding and if the payments had not been made, and Pullman instead had been liquidated in a Chapter 7 proceeding. Stip. 24.

31. Pullman fully paid its federal employment taxes for the quarters prior to the fourth quarter of 1986 and did not incur penalties and interest with respect to those taxes. Stip. 23.

32. Any conclusions of law set forth in these findings of fact will stand as additional conclusions of law; any findings of fact set forth in the following conclusions of law will stand as further findings of fact.

### CONCLUSIONS OF LAW

#### Jurisdiction

1. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b) as this matter "arises under" 11 U.S.C. § 547. Venue lies under 28 U.S.C. § 1409. Thus, this matter is properly before this Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(F).

2. As discussed in an earlier memorandum opinion dated June 17, 1992, entered in the Debtor's related bankruptcy proceeding, *Pullman Constr. Indus. v. United States (In re Pullman Constr. Indus.),* 142 B.R. 280 (1992), *aff'd* 153 B.R. 539 (N.D.Ill.1993) (Marovich, J.), appeal dismissed, 23 F.3d 1166 (7th Cir.1994), and pursuant to the subsequent enactment of 11 U.S.C. § 106 (effective Oct. 22, 1994), the United States cannot raise the defense of sovereign immunity, at least with respect to claims for recoveries of the principal amounts of preferences and claims for money damages against it arising under various provisions of the Bankruptcy Code, including § 547.

### Tax Payments Not Preferential Under 11 U.S.C. § 547(b)

3. A trustee or debtor-in-possession may avoid as preferential any transfer:

   a. of "an interest of the debtor in property," 11 U.S.C. § 547(b);

   b. made "to or for the benefit of a creditor," 11 U.S.C. § 547(b)(1);

   c. made "for or on account of an antecedent debt," 11 U.S.C. § 547(b)(2);

   d. "made while the debtor was insolvent," 11 U.S.C. § 547(b)(3);

   e. made within 90 days of the petition date (one year for creditors who qualify as "insiders" at the time of transfer), 11 U.S.C. § 547(b)(4); and

   f. which enabled the transferee to receive more than it would have received in a hypothetical Chapter 7 liquidation, 11 U.S.C. § 547(b)(5).

4. The burden of proof lies with the party asserting a preference, here Pullman, to establish all of the foregoing elements of § 547(b) by a "preponderance of the evidence." 11 U.S.C. § 547(g); *Matter of Prescott,* 805 F.2d 719, 726 (7th Cir.1986) (citations omitted).

5. As previously found, Finding 28, the United States filed claims against Pullman for federal employment taxes withheld, *see* Ex. 6 (copy of Pullman's final amended proof of claim). The United States was therefore a "creditor" of Pullman within the meaning of 11 U.S.C. § 101(10)(A) (1995), and the payments made by Pullman to the IRS were made "to or for the benefit of a creditor" as required by 11 U.S.C. § 547(b)(1) (1995).

6. The parties stipulated that Pullman was insolvent at all times during the 90 days prior to its filing in bankruptcy within the meaning of 11 U.S.C. § 547(b)(3). Finding 29.

7. The parties stipulated that all five contested payments were sent and received within 90 days of Pullman's filing in bankruptcy, thereby satisfying 11 U.S.C. § 547(b)(4). Stip. 15.

8. Finally, the parties stipulated that receipt of the contested five payments from Pullman enabled the IRS to receive more than it would have received if the payments had not been made and Pullman had instead been liquidated in a chapter 7 proceeding, thereby satisfying 11 U.S.C. § 547(b)(5).

### Debtor Only Had Interest in a Portion of Funds Paid to IRS

9. A payment is preferential, and thus recoverable, only to the extent the debtor had an identifiable property interest in the proceeds at the time of payment. 11 U.S.C. § 547(b); *Matter of Smith,* 966 F.2d 1527, 1529 (7th Cir.1992).

10. A debtor has no property interest in funds paid to the IRS to the extent a sufficient "nexus" lies between the payments and income and social security taxes previously withheld. *Begier,* 496 U.S. at 65–67, 110 S.Ct. at 2266–67.

11. Although the Supreme Court has not clarified how extensive the required nexus need be, it did conclude that a debtor's act of voluntarily paying its trust-fund tax obligations pre-petition is "alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." *Id.* at 66–67, 110 S.Ct. at 2267. Thus, Pullman's transfers to the IRS did not involve "an interest of the debtor in property" to the extent they were voluntary pre-petition payments of Pullman's trust fund obligations.

12. All five of the contested payments were "voluntary" pre-petition payments. The term "voluntary" is subject to a variety of interpretations and does not lend itself well to a single all-encompassing definition. *Stevens v. United States,* 49 F.3d 331, 334–35 (7th Cir.1995); *Johnson v. Trigg,* 28 F.3d 639, 641–42 (7th Cir.1994). "Voluntary," as the term applies to tax payments, means not "involuntary." *See* Allen J. Littman, *Reasonable Assumptions, Responsible Persons, and Invisible Boomerangs: Payments of Trust Fund Liabilities in and Before Bankruptcy,* 42 Fla.L.Rev. 711, 715 (1990). In *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983), our Circuit adopted the general definition of involuntary payment set forth in *Amos v. Commissioner,* 47 T.C. 65, 69, 1966 WL 1102 (1966): "[a]n involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file claim thereof." That definition is suitable to decide the present question. Here, the IRS had only written a number of letters notifying Pullman of its delinquency and asking a Pullman representative to contact the IRS. The panel in *Muntwyler* expressly rejected the notion "that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due." 703 F.2d at 1033. Thus, all five payments were voluntary for purposes of § 547(b).

13. Although all five payments contested here were voluntary, for reasons discussed below Pullman had an identifiable property interest in only $149,197.44 of the $610,143.64 in funds paid because a sufficient nexus exists between the remaining $460,946.19 paid to the IRS and income and social security taxes withheld by Pullman during the first quarter of 1987.

14. Pullman met its initial burden of establishing, *prima facie,* that it had a property interest in the $490,427.64 paid by way of the first four contested checks. *See* Ex. 1 (copies of checks payable to IRS and drawn on Pullman account). Pullman did not designate application of these payments to either the trust or non-trust portion of its tax liability. *Id.*

15. The burden thereafter shifted to the United States to demonstrate that Pullman did not have an identifiable property interest in funds paid by way of the first four checks.

16. With respect to the first three contested payments, the United States established by evidence with a clear inference that $341,230.19 of the $440,427.64 paid represented income and social security taxes Pullman withheld from gross wages during the first quarter of 1987. Under the Supreme Court's decision in *Begier,* those proceeds were held "in trust" for the United States, *see* 26 U.S.C. § 7501, and Pullman thus did not have an identifiable property interest in those funds. 496 U.S. at 67, 110 S.Ct. at 2262. Pullman did, however, have an interest in the remaining $99,197.44 attributable to its matching share of social security taxes. Pullman argues such a finding is tenuous because it is based solely on "handwritten worksheets prepared by some unknown person." Pls.Resp., p. 2; *see* Ex. 7. However, Pullman stipulated to the general admissibility of those documents, Stip. 41, and, a plain reading of the worksheets supports the United States' interpretation. Pullman further argues that the United States should have proffered testimony of a Pullman employee to collaborate its reading of the worksheets, but such is not required where, as here, the documents are self-explanatory and Pullman stipulated to their admissibility. In so stipulating, Pullman necessarily agreed to their authenticity, foundation, and relevancy as well.

17. With respect to the fourth contested payment, the United States has not demonstrated that Pullman voluntarily paid any portion of the $50,000.00 to satisfy its trust fund obligations. Thus, Pullman has demonstrated, by a preponderance of the evidence, that it had an identifiable interest in those funds for purposes of § 547(b).

18. With regard to the fifth contested payment of $119,716.00, Pullman clearly designated that the payment was applicable to trust fund liabilities alone. The back of check no. 12289 read in clear type: "[t]hese funds may only be applied to the 'trust portion' of the company's liability on its 941 return for the period ending 3/31/87. No portion of these funds may be applied to interest or penalties." Ex. 1. As a matter of well-established law, a taxpayer may designate application of voluntary payments to whatever type of liability it chooses. *Schroeder,* 900 F.2d at 1146–49; *Avildsen Tools,* 794 F.2d at 1251 (*quoting Muntwyler,* 703 F.2d at 1032) (citation omitted)). Thus, Pullman has failed to present even a *prima facie* case that it had a property interest in proceeds of the fifth check, because it defined that check as entirely paying trust fund liability.

19. By way of summary, Pullman has demonstrated by a preponderance of the evidence that it had an identifiable property interest in only $149,197.44 ($99,197.44 + $50,000.00) of the $610,143.64 it paid to the IRS within 90 days of filing in bankruptcy. The remaining $460,946.19 ($341,230.19 + $119,716.00) represented funds held in trust for the United States, in which Pullman held no identifiable property interest. Thus, Pullman can only seek to avoid $149,197.44 of the contested payments made the subject of this Adversary proceeding, because only that much represented payment of non-trust fund monies. However, Pullman's case fails even as to that limited amount.

### Non–Trust Payments Not for or on Account of Antecedent Debt

20. Pullman has not shown by a preponderance of the evidence that it paid the funds attributable to its non-trust taxes on account of antecedent debts, as required by 11 U.S.C. § 547(b)(2).

21. Although the term "antecedent debt" is not defined in the Bankruptcy Code, courts have generally construed it to mean the existence of a claim against the debtor at the

98

time of payment—even if the claim is unliquidated, unfixed or contingent. *Energy Co-op., Inc. v. SOCAP Int'l, Ltd. (In re Energy Co-op., Inc.),* 832 F.2d 997, 1001 (7th Cir. 1987).

22. When determining whether a claim for unpaid taxes existed before payment, a special rule applies: "[a] debt for a tax is incurred [for preference purposes] on the day when such tax is last payable without penalty, including any extension." 11 U.S.C. § 547(a) (1995).

23. As previously concluded, Pullman can only seek to recover $149,197.44 of the $610,-143.64 it originally sought to recover from the IRS because it could not establish an identifiable property interest in the remaining $460,946.19. To recover under § 547(b), Pullman must further demonstrate that the taxes satisfied by transfer of the $149,197.44 were "last payable without penalty" before the payments were made.

24. Pullman has not demonstrated by a preponderance that its non-trust fund taxes were last payable without penalty before it made the four payments to the IRS which included the $149,197.44 previously identified. Unlike income and social security taxes withheld, Pullman was not compelled under penalty by IRS regulation to deposit non-trust fund taxes with a qualified federal tax depository institution. Rather, Pullman's social security taxes were not due until the respective date on which Pullman was required to file its quarterly tax return (Form 941). *See* 26 U.S.C. § 6151 (1995). Pullman was not required to file its quarterly return for non-trust fund taxes until April 30, 1987. 26 U.S.C. §§ 6011, 6071, 6151 (1995); 26 C.F.R. §§ 31.6011(a)–4 (returns of income taxes withheld), 31.6071(a)–1 (time for filing returns), 31.6151–1 (time for paying tax). As previously found, all four payments in question were sent and received on or before that date. Thus, Pullman has failed to demonstrate by a preponderance of the evidence that its payments of non-trust fund taxes were for or on account of antecedent debts as required by § 547(b)(3). It may be ironic, but because Pullman paid too early, it loses here.

### CONCLUSION

Pullman has failed to satisfy its burden of demonstrating the elements of § 547(b) by a preponderance of the evidence. Accordingly, judgment is by separate order entered entirely in favor of the United States and against Pullman.