**In re PULLMAN CONSTRUCTION INDUSTRIES, INC., et al., Debtors.**

**PULLMAN CONSTRUCTION INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America and State of Illinois, Dept. of Revenue, Defendants.**

**Bankruptcy No. 87 B 06441–44. Adv. No. 92 A 00015.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 2, 1996.

Stephen T. Bobo, D'Ancona & Pflaum, Chicago, IL, for Plaintiff Debtor Pullman.

Charles J. Cannon, Trial Attorney, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Joel Nathan, Special Assistant U.S. Attorney, Chicago, IL, for Defendant United States.

## AMENDMENT TO CONCLUSIONS OF LAW ENTERED ON PLAINTIFF'S MOTION TO AMEND JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

### Introduction

On May 1, 1987, Pullman Construction Industries, Inc. and three wholly-owned subsidiaries (collectively "Pullman" or "Debtor") filed petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Their cases were jointly administered. Pullman administered its affairs as debtor-in-possession pursuant to 11 U.S.C. §§ 1107–08.

Pullman filed this two-count Adversary Complaint, seeking to recover certain allegedly preferential payments Pullman made to the IRS pre-bankruptcy, ultimately reducing its claim to $610,143.64.[1] The case was tried and judgment entered for the United States on August 20, 1995.

Pullman timely moved to alter or amend that judgment. The motion is based on asserted error of law contained in the Conclusions of Law on which the judgment rested. Having reviewed the briefs filed by the parties on this motion, the following Amendment to Conclusions of Law is hereby entered. Pursuant thereto and by separate order, an amended judgment will be entered in favor of Pullman and against the United States in the amount of $99,147.44 without interest, and all other relief sought by Plaintiff is denied.

### FINDINGS OF FACT

Extensive Findings of Fact were made earlier following trial in this Adversary proceeding. *See In re Pullman Constr. Indus., Inc.,* 186 B.R. 88 (Bankr.N.D.Ill.1995) (Schmetterer, J.) ("Pullman"). As no error of fact therein has been asserted, those Findings of Fact are readopted. Any factual findings referred to herein that are not contained in the earlier Findings will stand as additional Findings of Fact.

---

1. Pullman originally sought to recover eight payments which totaled in excess of $1 million, but subsequently stipulated that three of the payments were not preferential. *Pullman,* 186 B.R. at 90.

### The August 30 Judgment and Motion to Alter or Amend

Prior to filing in bankruptcy, Pullman employed 595 people and was required to deduct and withhold income and social security taxes from gross wages earned by its employees. *Pullman,* 186 B.R. at 91; 26 U.S.C. §§ 3102(a) (1987).[2] Pullman was required to deposit these taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501 (1987). Thus, these taxes are commonly known as "trust fund taxes." *See Begier v. Internal Revenue Serv.,* 496 U.S. 53, 55–56, 110 S.Ct. 2258, 2261, 110 L.Ed.2d 46 (1990). In addition, Pullman was required to pay various other taxes, including its share of social security taxes. *See* 26 U.S.C. § 3111(a) (1987). Unlike withholding taxes, however, these funds are not held in trust for the United States and are referred to as "non-trust fund taxes." *Pullman,* 186 B.R. at 91. Nonetheless, Pullman was required to deposit its share of social security taxes into a bank account along with trust fund taxes, pursuant to § 6302 of the 1987 Internal Revenue Code. 26 C.F.R. § 31.6302(c)–1 (1987).

Pullman was obliged under the law to deposit its taxes with a qualified federal tax depository institution shortly after each payroll was made. The required taxes as defined by the Tax Code included the employer's share of § 3111 social security taxes. 26 C.F.R. § 31.6302(c)–1(a)(1)(iii) (1987).[3] Tax deposits associated with each payroll were required to be made within three banking days after the end of each one-eighth month period in which the payroll was issued, 26 C.F.R. § 31.6302(c)–1 (1987), unless tax liability equaled or exceeded $100,000.00 for the period, in which case Pullman was required to deposit such taxes within one banking day after the payroll was made. 26 C.F.R. § 31.6302(c)–1 (1987). *Pullman,* 186 B.R. at 91. If an employer failed to make such deposits in a timely fashion, the IRS was authorized to assess a 10% failure-to-deposit penalty unless the failure was shown to be due to reasonable cause. 26 U.S.C. § 6656(a) (1987); 26 C.F.R. § 301.6656–1 (1987).

In late 1986 and early 1987, Pullman experienced severe cash flow shortages and operating losses that would eventually snowball into financial collapse. By February 1, 1987, 90 days before filing in bankruptcy, Pullman had fallen behind in making its required deposits of trust fund taxes for the first quarter of 1987. *Pullman,* 186 B.R. at 92. During the 90 days prior to May 1, 1987, the date Pullman filed its bankruptcy petition, Pullman sent eight checks, totaling $1,031,790.64, directly to the IRS. *Id.*

The United States filed an amended claim against the Pullman estate which reflects penalties in the amount of $165,868.89 assessed against Pullman in connection with its failure to timely deposit federal employment taxes. *Id.* at 95. Prior to the fourth quarter of 1986, Pullman had fully paid its federal employment taxes and did not incur penalties and interest with respect to those taxes. *Id.*

As set forth in the Findings entered earlier herein, out of the first three checks sent by Pullman to the IRS during the 90 days prior to bankruptcy, $99,197.44 was allocable to non-trust fund taxes. *Id.* at 94. The fourth payment sought to be recovered by Pullman was the payment of $50,000.00 made by Pullman to the IRS. This amount did not correlate to the amount of any particular tax deposit that Pullman had failed to make and was not listed on Pullman's tax return for the first quarter of 1987. The remaining payments were found to be trust fund taxes and the rulings thereon were not questioned by the pending motion. *Id.* at 96–97.

It was earlier held herein that Pullman did not establish by a preponderance of the evidence that it paid $149,197.44 in non-trust taxes on account of antecedent debts, as required by 11 U.S.C. § 547(b)(2). *Id.* That

---

2. As the 1987 tax code and regulations were in effect during the period of payments in question, this opinion will refer to the Code and regulations then in effect.

3. The defined term "taxes" means: "(a) The employee tax withheld under § 3102, (b) The employer tax under § 3111, and (c) The income tax withheld under § 3402, including amounts withheld with respect to qualified State individual income taxes." 26 C.F.R. § 31.6302(c)–1(a)(1)(iii) (1987).

opinion looked to § 547(a), which states that for preference purposes, "a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension." 11 U.S.C. § 547(a). Thus, to recover under § 547(b), Pullman needed to demonstrate that the taxes satisfied by transfer of the $149,197.44 were "last payable without penalty" before the payments were made. *Id.* at 98. It was earlier concluded that Pullman failed to meet this burden. *Id.*

Pullman moved to alter or amend the judgment in order to correct what it asserts to be error of law in the earlier ruling. It argues that Bankruptcy Code § 547(a)(4) dictates the applicable date determining when a tax is incurred, and thus Pullman's payments of $149,197.44 were for an antecedent debt and are recoverable preferences. Pullman also requests consideration of the question of whether the ordinary course of business defense raised by the United States in its initial brief is valid (an argument not necessary to reach earlier in light of rulings in the original opinion). Finally, Pullman requests consideration of whether Pullman is entitled to prejudgment interest in the event that it recovers the $149,197.44 referred to in the instant motion (interest being another issue not reached earlier since no recovery was then allowed).

### Amendment to Conclusions of Law

This discussion will stand as an amendment to the earlier Conclusions of Law herein, 186 B.R. 88, and the earlier Conclusions are readopted except to the extent they are hereby amended.

### Jurisdiction

Because this matter "arises under" 11 U.S.C. § 547, subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies here pursuant to 28 U.S.C. § 1409. As such, this matter is properly here pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(a) of the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### Applicable Standard on Motion to Alter or Amend

■ This motion to alter or amend judgment has been brought under Fed.R.Civ.P. 59, which is incorporated by Fed.R.Bankr.P. 9023. Motions under Rule 59 can only be brought to deal with manifest errors of law or fact, or if there is a need to present newly discovered evidence. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986).

■ The decision to grant or deny a Rule 59 motion is within the Court's discretion. *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263 (7th Cir.1995).

Having found error of law in the earlier ruling, the motion to alter or amend judgment is allowed through entry of this Amendment to Conclusions of Law, to the extent hereby allowed.

### Issues Under § 547(b)

■ The threshold issue is whether an error of law was made in the opinion and judgment that entirely denied Pullman's preference recovery action. Section 547(b) of the Bankruptcy Code provides that a trustee or a debtor-in-possession may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; [and] (4) made on or before 90 days before the filing of the petition [this period is extended to one year in the case of a creditor who qualifies as an "insider"].

11 U.S.C. § 547(b). Moreover, the transfer must have allowed the creditor to receive more than it would have received in a hypothetical Chapter 7 liquidation. 11 U.S.C. § 547(b)(5). Pullman has the burden of proof to establish all elements of § 547(b) by a "preponderance of the evidence." 11 U.S.C. § 547(g); *Pullman,* 186 B.R. at 95 (*citing Matter of Prescott,* 805 F.2d 719, 726 (7th Cir.1986)).

All elements of a preference action under § 547(b), with exception of the antecedent debt requirement, were earlier found to be

established and are not at issue now. Pullman had an interest in $149,197.44 of the payments made to the IRS. *Pullman* at 97. The United States was a creditor of Pullman and the payments were made to or for the benefit of the United States. *Id.* at 96. Pullman was insolvent at all times during the 90 days prior to its filing in bankruptcy, and receipt of these payments enabled the IRS to receive more than it would have received if the payments had not been made and Pullman had instead been liquidated in a Chapter 7 proceeding. *Id.* The remaining issue, the one that Pullman has now challenged, is whether payments totaling $149,197.44 were on account of an antecedent debt.

■ The term "antecedent debt" is generally construed as "the existence of a claim against the debtor at the time of payment." *Pullman* at 97–98, and cases cited. Such a claim can be liquidated, unfixed, or contingent. *Id. (citing Energy Co–op., Inc. v. SO-CAP Int'l, Ltd. (In re Energy Co–op., Inc.),* 832 F.2d 997, 1001 (7th Cir.1987)). The Bankruptcy Code has specifically defined when a tax debt is considered an antecedent debt: "A debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension." 11 U.S.C. § 547(a)(4).

Pullman argues under § 547(a)(4) that the debt was incurred on the date Pullman was subject to a penalty for failure to deposit employment taxes pursuant to the Tax Code. Under Pullman's view, the subsequent payments were made on account of an antecedent debt and the later due date for filing the tax return was irrelevant. The United States argues that the appropriate date was the date the return was due to be filed; if that date is correct under § 547(a)(4), there was no antecedent debt on the dates of payment involved here. Unfortunately, there is little judicial interpretation of § 547(a)(4), and Congress created the section with very little explanation. The earlier opinion adopted the government's view. On reconsideration and for reasons stated below, that

part of the earlier opinion is now viewed as error.

A number of published decisions have analyzed § 547(a)(4) carefully. *See In re Harvard Mfg. Corp.,* 97 B.R. 879 (Bankr. N.D.Ohio 1989); *In re E & S Comfort, Inc.,* 92 B.R. 616 (Bankr.E.D.Pa.1988); *In re American Int'l Airways, Inc.,* 83 B.R. 324 (Bankr.E.D.Pa.1988), *rev'd sub nom. Begier v. United States Internal Revenue Service,* 878 F.2d 762 (3d Cir.1989), *aff'd,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990);[4] *In re Greasy Creek Coal Co.,* 1984 WL 15648, 84–2 USTC ¶ 9651 (Bankr.S.D.W.Va.1984) (No. 81–10032); *In re Ripley,* 926 F.2d 440 (5th Cir.1991). Of the foregoing cases, four suggest that the relevant date for preferences purposes is the date a penalty is incurred, not when the return is due. *See Harvard Mfg.,* 97 B.R. 879; *E & S Comfort,* 92 B.R. 616; *American Int'l Airways,* 83 B.R. 324; *Greasy Creek,* 1984 WL 15648, 84–2 USTC ¶ 9651. *Ripley* suggests otherwise, but that case dealt exclusively with installment payments of estimated taxes, not preferences. *See Ripley,* 926 F.2d 440.

■ The first four cases are well reasoned. For preference purposes under § 547(a)(4), it is concluded that the relevant date is when a party is exposed to penalties regardless of the date the return is actually due. It has been said that "section 547(a)(4) established, beyond question that the date when penalties are imposed upon the debtor as taxpayer is the date when tax payments are due, irrespective of the date when tax returns must be filed." *E & S Comfort,* 92 B.R. at 624. *See also Harvard Mfg.,* 97 B.R. at 882–83 (because failure to make deposits in a timely manner places the employer in a penalty position, a debtor's tax debt is created when it fails to make timely deposits as required under IRS regulations). These rulings comport with what the statute says. A plain reading of § 547(a)(4) does not reveal a reference to the filing date of a tax return; the only time reference in the statute itself is

---

4. As cited, this case was reversed on appeal, and that reversal was affirmed by the Supreme Court. However, reversal was based on the fact that the payments in question were trust fund taxes and, thus, were not property of the debtor. The Circuit Court did not address the issue of § 547(a)(4). *See Begier v. United States Internal Revenue Service,* 878 F.2d 762 (3d Cir.1989) *aff'd.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

to when a penalty has been incurred. The statute clearly makes reference to the date that a tax is payable without penalty rather than date of the filing of the return. Where a statute is plain on its face, it must be interpreted as it reads without resort to legislative history.

The government here relies on *In re Ripley*, 926 F.2d 440, 448 n. 28 (5th Cir.1991) ("Congress understood the phrase 'when such tax is last payable without penalty' in section 547(a)(4) to mean when the return was last due").

Ripley arose in a bankruptcy Chapter 13 context and involved the question of whether certain taxes, which were due to be deposited prior to the bankruptcy petition date, were a prepetition claim. The case did not involve a preference claim, but among other arguments, the debtors asserted § 547(a)(4) in support of their position. The Fifth Circuit refused to apply that provision there, stating that

> section 547(a)(4) must be read in context. It delineates which prepetition transfers must be recovered by the bankruptcy trustee. Because the trustee may avoid only those payments that are "on account of *antecedent* debt," the date on which the debt was incurred is critical. Section 547(a)(4) supplies that date with respect to tax claims for purposes of this section; it is not intended as a universal statement of when taxes "become payable."

*Id.* at 447. *Ripley* thus implied the appropriateness of applying § 547(a)(4) literally in a preference context, even though not appropriate in that case.[5] But however the opinion is read, it did not pertain to a preference case and is doubtful authority for the present issue.

It is concluded, under the plain language of § 547(a)(4) of the Bankruptcy Code, that a tax debt is incurred when a penalty is applicable regardless of the date the tax return is required to be filed.

Although the employer's share of social security taxes is not held in trust for the United States, it is required to be deposited in either the Federal Reserve Bank or an authorized commercial bank depository. 26 C.F.R. § 31.6302(c)–1 (1987). The same section which requires deposits to be made for employee withholding tax (trust fund taxes) requires deposits to be made for employer tax. *Id.* Deposits are required to be made either monthly or quarter-monthly, depending on the amount of withholding. 26 C.F.R. § 31.6302(c)–1(a)(1)(ii) (1987). If the employer fails to make timely deposit of employee withholding taxes and the employer's share of social security, and does so without proving reasonable cause, it is subject to penalty. 26 U.S.C. § 6656 (1987); *see also* 26 C.F.R. § 301.6656–1 (1987).

It is generally true that taxes are due and payable at the time for filing returns. 26 U.S.C. § 6151(a) (1987). However, there are special provisions of the tax regulations pertaining to the use of Federal Reserve banks and authorized financial institutions. 26 U.S.C. 6151(b)(2) (1987); 26 C.F.R. § 31.6151–1(b) (1987). As these provisions indicate, Pullman was compelled to make timely deposit of its share of employment taxes in an authorized bank depository in order to avoid a penalty. It did not do so for the payments in issue here. Pullman was subject to a failure-to-deposit penalty unless such failure to deposit was due to reasonable cause. Pullman never sought a reasonable cause exception.

There is no dispute about the facts. The parties stipulated that Pullman was required to deposit federal employment taxes with a qualified federal tax depository institution within three banking days after the end of each eight-month period in which the payroll was issued. In some cases, Pullman was required to deposit the amount within one banking day following the eight-month period. Amended Joint Pretrial Statement, Statements and Stipulation of Uncontested Facts and Documents ("Stip") at ¶ 4. In addition, the parties stipulated that failure to make timely deposit of employment taxes

---

5. The *Ripley* decision at 926 F.2d 448 includes a brief excerpt from the legislative history of § 547 as further support for the court's rejection of the debtors' argument. The Court of Appeals for the

District of Columbia Circuit undertook a broader review of that history in *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987).

with a qualified depository resulted in the IRS assessing the employer with a failure-to-deposit penalty. Stip at ¶ 5. Further, the parties stipulated that the IRS did, in fact, assess penalties against Pullman in connection with its failure to timely deposit its employment tax liabilities. Stip at ¶ 10.

As stated in the earlier Conclusions herein, to recover under § 547(b), Pullman must demonstrate that the non-trust taxes satisfied by its payments totalling $149,197.44 were "last payable without penalty" before the payments were made. *Pullman*, 186 B.R. at 98. Pullman paid $99,197.44 of the non-trust fund taxes with three checks. These amounts were last due without penalty on the first banking day after February 1, 1987 ($33,255.51), on the first banking date after February 15, 1987 ($33,506.19), and on the first banking day after March 8, 1987 ($32,435.74). *Pullman*, 186 B.R. at 93–94. Payments were actually made on February 27, 1987 ($33,255.51 and $33,506.19), and March 18, 1987 ($32,435.74), respectively. *Id.*

Pullman thereby sent each of the foregoing three payments directly to the IRS after the dates that penalties were incurred. Thus, a total of $99,197.44 in non-trust fund payments were made on account of antecedent debt.

Pullman's additional payment of $50,000.00 was not attributed to any particular missed deposit subject to a penalty. *Pullman*, 186 B.R. at 94. Therefore, it did not establish that $50,000.00 payment was on account of an antecedent debt.

Because $99,197.44 of the non-trust fund payments were on account of antecedent debt, all elements of a preference action have been proven as to those payments. Thus, the government's ordinary course of business defense must be addressed.

### The Ordinary Course of Business Defense Fails

■ Although a debtor or its trustee has the burden of proving that a transfer payment is avoidable as a preference, a creditor has the burden of proving whether a defense to the preference action applies. 11

U.S.C. § 547(g). Section 547(c) lists six exceptions to the Trustee's voidable preference powers. In this case, the only one asserted is § 547(c)(2), commonly known as the ordinary course of business exception. In order for a payment to be in the ordinary course of business, it must be for a debt incurred in the ordinary course of business of both the debtor's and the creditor's business affairs, must have been made in the ordinary course of business of both parties, and must have been made according to ordinary business terms. 11 U.S.C. § 547(c)(2). Each of these elements must be proven by a preponderance of the evidence. *Matter of Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir.1995).

First, the United States must show that the debt was incurred in the ordinary course of business. As stated, Pullman employed over 500 people. As an employer, it was required by federal tax regulations to withhold employment taxes and remit both the withheld taxes as well as it share to the IRS. *See* 26 U.S.C. §§ 7501, 3111(a); 26 C.F.R. § 31.6302(c)–1. Pullman regularly incurred such tax obligations. Thus, Pullman's debt to the IRS was incurred in both its and the IRS's ordinary course of business.

■ The government must also show that payments were made in the ordinary course of its and Pullman's business. However, the government did not meet its burden of proof in that regard. A late payment is normally outside of the ordinary course of business; however, this is not without exception. *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993). Neither the Bankruptcy Code nor the legislative history surrounding § 547 indicates that late payments can never be in the ordinary course. *Matter of Xonics Imaging Inc.*, 837 F.2d 763, 765 (7th Cir.1988). Courts apply several factors to determine whether payments were made in the ordinary course of business. *In re Midway Airlines, Inc.*, 180 B.R. 1009, 1013 (Bankr.N.D.Ill.1995) (Squires, J.). One such factor is whether the "debtor or creditors engaged in any unusual collection or payment activit[ies]." *Id.* (Citations omitted.)

The purpose of this exception is:

    ... to leave undisturbed normal financial relations, because it does not detract from

the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. In the tax context, this exception will mean that a payment of taxes when they are due, either originally or under an extension ... will not constitute a voidable preference. However, if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference, if the other elements of a preference are present. In that case, the tax debt would be antecedent debt and would not fall under this exception.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News, pp. 5787, 6329. "[L]ate payment of taxes after a penalty attaches would apparently not be protected under this section. The imposition of a penalty would seem to remove the payment from the ordinary course of at least the creditor's business." *Norton Bankruptcy Law and Practice,* 2d § 57:16 (1994) (interpreting H.R.Rep. No. 595 95th Cong. 1st Sess. 373 (1977)).

As shown above, the deposits in question, totalling $99,197.44, were late, and penalties were imposed thereon before those payments were made. Therefore, Pullman's three direct payments of non-trust taxes to the IRS totalling $99,197.44 were not made in the ordinary course of business within the meaning of § 547(c)(2). Prior to the fourth quarter of 1986, Pullman regularly deposited employment taxes in an authorized bank depository and did not incur penalties and interest with respect to those taxes. *Pullman,* 186 B.R. at 95. In December 1986, Pullman sent one payment directly to the IRS to make up for a missed deposit. *Id.* at 91. This payment is not at issue.

"During the months of February, March and April, 1987, the three months before the petition was filed, Pullman at times made direct payments of its employment tax liabilities to the IRS and at other times made deposits with a qualified federal depository bank." Stip at ¶ 40. The United States argues that this practice was within Pullman's ordinary course of business:

It was in the ordinary course of Pullman's business to pay wages to its employees; to withhold federal income and employment taxes from those wages; and to pay over the withheld income and FICA taxes to the IRS by means of deposits with a bank qualified as a federal tax depository when it was financially able to make timely deposits thereof or by means of direct payments to the IRS in lieu of deposits when it was financially unable to make the deposits on time.

Proposed Findings of Fact and Conclusions of Law Submitted by the United States at ¶¶ 51–52. This argument is flawed. Pullman's ordinary practice was to deposit these taxes in an authorized depository. The fact that Pullman alternated between deposits and direct payments during its slide into bankruptcy does not demonstrate that this was Pullman's ordinary course of business. A few late tax payments do not constitute a new "ordinary course of business." *See Xonics,* 837 F.2d at 767.

Because Pullman's ordinary course of business was to deposit taxes on time with an authorized depository, its direct payments to the IRS were made outside the ordinary course of business. The United States has not established otherwise by a preponderance of evidence.

■■■ A debtor or its trustee is "ordinarily entitled to recover interest on a preference judgment against a transferee." *In re Husher,* 131 B.R. 550, 554 (E.D.N.Y.1991); *In re Demetralis,* 57 B.R. 278, 284 (Bankr.N.D.Ill. 1986) (Ginsberg, J.) (citations omitted). However, the rule changes when the transferee is the United States. "For well over a century, [the Supreme Court], executive agencies, and Congress itself consistently have recognized that federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result." *Library of Congress v. Shaw,* 478 U.S. 310, 316, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986). "[I]nterest on a claim or judgment against the United States is not awardable unless it has expressly waived its sovereign immunity." *Harvard Mfg.,* 97 B.R. at 884 (*citing United States v. Alcea Band of Tilla-*

*mooks*, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951)). · "Such waivers of immunity are not to be 'liberally construed.' " *In re Pullman Const. Indus. Inc.*, 142 B.R. 280, 282 (Bankr.N.D.Ill.1992) (Schmetterer, J.) (*citing United States v. Nordic Village*, 503 U.S. 30, 32, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992)), *aff'd sub nom. United States v. Pullman Const. Indus., Inc.*, 153 B.R. 539 (N.D.Ill.1993), *appeal dismissed*, 23 F.3d 1166 (7th Cir.1994). This waiver must be "unequivocally expressed." *Id.*

■■■■■ The law is well settled that "interest cannot be awarded against the United States unless the government has expressly waived its sovereign immunity to allow such interest by contract, statute or consent of Congress." *Husher*, 131 B.R. at 554 (*citing Shaw*, 478 U.S. at 311, 106 S.Ct. at 2958; *Easley v. United States*, 719 F.Supp. 145, 148 (W.D.N.Y.1989)). An individual may only recover interest if there is "express Congressional consent to the award of interest separate from a general waiver of immunity to suit." *Husher*, 131 B.R. at 554 (*quoting Shaw*, 478 U.S. at 314, 106 S.Ct. at 2961). The Bankruptcy Code, however, does not expressly waive the United States' sovereign immunity with specific regard to an award of prejudgment interest. *Husher*, 131 B.R. at 554 (*citing WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1006 (1st Cir.1988)).

One court has held that prejudgment interest is awardable against the government under an express waiver of sovereign immunity provided in Bankruptcy Code § 106(c). *Harvard Mfg.*, 97 B.R. at 884. Subsequent to this decision, the 1994 amendments to the Bankruptcy Code revised § 106. Bankruptcy Reform Act of 1994, Pub.L. 103–394, 108 Stat. 4106 *et seq.* The 1994 amendments overruled two cases which had effectively held that a debtor or trustee could not recover a monetary judgment against a sovereign. H.R.Rep. No. 835, 103rd Cong., 2d Sess. 1994, U.S.Code Cong. & Admin.News 1994, p. 3340. While the amendments broadly waived sovereign immunity in many areas, Congress did not expressly grant a waiver of sovereign immunity for recovery of prejudgment interest.

In light of this history, the *Harvard* decision is not persuasive.

Pullman argues that to deny prejudgment interest would be akin to a denial of full recovery. Pullman Proposed Conclusions at ¶¶ 24–30. However, any "policy, no matter how compelling, is insufficient standing alone, to waive this immunity." *Shaw*, 478 U.S. at 321, 106 S.Ct. at 2965 (*citing United States v. New York Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 606, 91 L.Ed. 577 (1947)).

Prejudgment interest may not be awarded against the United States without an express waiver of sovereign immunity. There is no such waiver within the Bankruptcy Code or otherwise. That being the case, Pullman's request for prejudgment interest must be denied.

### *CONCLUSION*

Pullman's motion to alter and amend this Court's judgment is allowed in part and denied in part. By separate judgment order to be entered, the payment transfers in issue will be avoided to the extent of $99,197.44, but no prejudgment interest will be awarded.